David G. WILLIAMS, Plaintiff,

v.

Thomas M. BURNS, Peter J. Wall and
the Anschutz Corporation, Defendants.

Civ. A. No. 78–K–260.

United States District Court,
D. Colorado.

Jan. 29, 1979.

Felix M. Licini, Boulder, Colo., Franklin R. Navarro, Houston, Tex., for plaintiff.

William J. Madden, Madden & Strate, Lakewood, Colo., John E. Burrus, Morrato, Gueck & Colantuno, Denver, Colo., for defendants.

## ORDER

KANE, District Judge.

This is an action for defamation. Jurisdiction is based on diversity of citizenship. A motion to dismiss the complaint was denied on March 21, 1978. On the same date defendants' motion for a more definite statement was granted. After filing the more definite statement, plaintiff was permitted to file an amended complaint. Upon receipt of the amended complaint, defendants filed motions to dismiss and to strike. Briefs were ordered and received after various requests for extensions of time. The motions are now ripe for determination.

The second amended complaint alleges that plaintiff was negotiating the sale of certain workover drilling rigs and barges to defendant The Anschutz Corporation in late February and early March, 1977. He claims that the U.S. Bankruptcy Court in Lafayette, Louisiana encouraged plaintiff to make this sale since plaintiff was offering this equipment for a sales price of $1,700,-000 plus his commission; and that if plaintiff did not find a buyer in the immediate future the court would approve an auction sale bid on this same equipment for a price of $970,000.

Plaintiff alleges that on or about March 4, 1977 defendant Burns made defamatory statements of and concerning plaintiff which were directly communicated and published to Mr. Phil Anschutz, president of defendant The Anschutz Corporation, "in a manner which evidenced malice and reckless disregard for the truth of the statements, and was destitute of heed or concern for consequences, especially foolishly heedless of danger, headlong, rash, and without thought or care of consequences." The statements allegedly made by defendant Burns are set forth with specificity in the second amended complaint: (a) That plaintiff was unable to sell the rigs and barges to defendant The Anschutz Corporation because a completed sale of the rigs had already been made to other parties, and thus the rigs and barges were no longer available for sale; (b) That plaintiff's proposed sale of the rigs and barges to defendant The Anschutz Corporation was fraudulent; (c) That plaintiff had misled defendant The Anschutz Corporation in his negotiations over the sale. As alleged, the actual words used were:

a. "That these rigs were not owned by Mr. Williams and had been sold at the bankruptcy sale."

b. "The fraud was that Mr. Williams was going to get this $450,000 as a part of this transaction and put it in his own pocket to the detriment of about $400–600,000 worth of unsecured creditors who were going to get nothing."

c. "Good Lord, I have just found out that these drilling barges are subject to the bankruptcy court and that they have been sold by order of the bankruptcy court; and I have also found out there is a whole bunch of unsecured creditors in that bankruptcy."

d. "I don't understand what Williams is trying to do, but my advice as your attorney is to have no more dealings with him."

e. "That is the frosting for the cake."

f. "It looked to me like there was fraud."

g. "Leasco and the First National Bank of Chicago had bought them on February 10, 1977, on the courthouse steps."

Plaintiff claims that defendant Burns was retained, one day prior to making the statements, by defendant The Anschutz Corporation for the purpose of providing the corporation with information on plaintiff and plaintiff's ability to produce the rigs and barges for sale. Defendant Burns allegedly made statements which attributed fraud and misrepresentations on the part of plaintiff. Plaintiff claims that said statements were "attended by circumstances of malice and insult as well as a wanton and reckless disregard of plaintiff's rights and feelings."

In the second claim for relief plaintiff alleges that defendant The Anschutz Corporation specifically authorized the acts complained of herein, and, hence, that The Anschutz Corporation is vicariously liable for damages to be assessed against defendant Burns.

In the third claim for relief plaintiff alleges that defendant Wall is liable as a general partner of defendant Burns for damages to be assessed against defendant Burns.

In the fourth claim for relief plaintiff alleges that on or about March 4, 1977, defendant Burns made defamatory statements of and concerning plaintiff, specifically concerning plaintiff's business reputation and reputation for veracity, and that he published them to Mr. Warren Rush, the "bankruptcy lawyer." Plaintiff claims that "these statements were published with circumstances of malice and insult as well as a wanton and reckless disregard of plaintiff's rights and feelings."

The statements are:

a. "He's a crook."

b. "He's trying to defraud the creditors."

c. "He lied to me."

d. "He's trying to screw the creditors."

In the fifth claim for relief plaintiff alleges that defendant The Anschutz Corporation is vicariously liable for damages to be assessed against defendant Burns for statements made to Mr. Warren Rush. Similarly, his sixth claim alleges that defendant Wall is liable as a general partner for damages to be assessed against defendant Burns as a result of statements made to Warren Rush.

The first, second and third claims for relief of plaintiff's second amended complaint relate to the alleged defamatory statements made by defendant Burns to Mr. Phil Anschutz on or about March 4, 1977. We are not presently concerned with determining whether the alleged statements are defamatory or true. Rather, the issues are: (1) Was this communication a publication, and (2) if so, was it "qualifiedly privileged"?

█ Defendant The Anschutz Corporation argues that the second claim for relief fails to state a claim since "a corporation does not publish a slander when one employee or agent of the corporation communicates with another employee or agent of the corporation." Defendant's reliance on

*M. F. Patterson Dental Supply Co. v. Wadley,* 401 F.2d 167 (10th Cir. 1968), is misplaced. In that case the Tenth Circuit, in applying Oklahoma law, held that "defamatory words regarding a discharged employee spoken by a supervisory employee in the presence and hearing of a fellow employee [did] not constitute a publication. . . . The rationale is that when one corporate employee relates a defamatory statement to a fellow employee, the corporation is but communicating with itself." *Id.* at 171. In that case the court recognized that there is confusion among the jurisdictions whether to treat such a defamatory communication as unactionable for lack of publication or because it is a qualifiedly privileged occasion. Determining that Oklahoma had adopted the lack of publication concept, the court ruled accordingly. Such is not controlling here. Since the statements were allegedly made in Colorado, the *lex loci delictus* applies.

Since the Supreme Court of Colorado has not definitively resolved the question, but in comparable matters has shown preference for the Restatement, the view of the Restatement of Torts 2d § 577(i) will be followed. It provides:

*Communication by one agent to another agent of the same principal.* The communication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent but also by the principal and this is true whether the principal is an individual, a partnership or a corporation. On the conditions under which the communication is privileged, see § 596.

The communication between defendant Burns and the president of The Anschutz Corporation was a publication not only by defendant Burns but also by defendant The Anschutz Corporation. *See Arvey Corporation v. Peterson,* 178 F.Supp. 132 (D.Pa. 1959); *Kelly v. Loew's Inc.,* 76 F.Supp. 473 (D.Mass.1948). *See also Denver Public Warehouse Co., et al. v. Holloway,* 34 Colo. 432, 83 P. 131 (1905).

Plaintiff's fourth, fifth and sixth claims for relief are based upon statements allegedly made to Mr. Warren Rush. Mr. Rush was the "bankruptcy lawyer" for plaintiff Williams, president of Atchafalaya Workover Contractors, Inc., a Louisiana Corporation. The statements address plaintiff's business reputation and his reputation for veracity, which plaintiff claims "were published with circumstances of malice and insult as well as a wanton and reckless disregard of plaintiff's rights and feelings." The statements are set out with specificity in the complaint.

Defendant The Anschutz Corporation argues that the communication to Mr. Rush was not such a publication as to support an action for slander since he was the agent representing the plaintiff in the matter discussed in the communication. I can not agree. The Restatement of Torts 2d § 577, Comment "e" provides:

*e. Publication to agent.* The fact that the defamatory matter is communicated to an agent of the defamer does not prevent it from being a publication sufficient to constitute actionable defamation. The publication may be privileged, however, under the rule stated in § 593. So too, *the communication to a servant or agent of the person defamed is a publication although if the communication is in answer to a letter or a request from the other or his agent, the publication may not be actionable in defamation.* (Emphasis added.)

Defendant's reliance on *Millsaps v. Bankers Life Company,* 35 Ill.App.3d 735, 342 N.E.2d 329 (1976), is misplaced. The defendant's report in that case had been requested by plaintiff's attorney. The court concluded, "that letter is equivalent to a publication to plaintiff himself and therefore is privileged and is not actionable." *Id.* at 335. It has not been alleged in the case at bar that the communication by defendant Burns was made in response to a letter or any other request from plaintiff or his agent Mr. Rush.

Since the Colorado Supreme Court has not resolved the particular issue, once again

the view of the Restatement of Torts 2d § 577 is adopted in determining that the communication by defendant Burns to Mr. Warren Rush constituted a publication within the meaning of the law of defamation.

■ Defendant Wall has filed a motion to dismiss the third and sixth claims for relief of the second amended complaint on the ground that he cannot be held vicariously liable for the alleged malicious slander by his partner, defendant Burns. Colorado Revised Statutes 7–60–113 (1973) provides:

*Partner's wrongful acts—liability.* Where by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same intent [sic] as the partner so acting or omitting to act.

Defendant Wall's liability as a partner is governed by the Colorado Uniform Partnership Law. Thus, he is rightfully held accountable for the wrongful acts of his partner committed in the ordinary course of their law practice. Since it has already been determined that defendant Burns published the alleged defamatory statements, the defendant Wall, as his partner in the practice of law, must also be held to have published the alleged defamatory statements.

Although all of the defendants can be deemed to have published the alleged defamatory statements, the question of "qualified privilege" must now be considered. The Supreme Court of Colorado, in *Denver Public Warehouse Co., et al. v. Holloway, supra,* addressed the question of communications between stockholders, officers, directors and employees of a corporation. The court determined that they had the right or privilege to communicate with each other and that the party to whom they were referring could not recover for such statements unless the communications were made with malice or were communicated to some person outside the corporation.

The Restatement of Torts 2d § 595 sets forth the "qualified privilege" defense for protecting the interest of others:

*Protection of Interest of Recipient or a Third Person.*

(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the recipient or a third person, and

(b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

(2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that

(a) the publication is made in response to a request rather than volunteered by the publisher or

(b) a family or other relationship exists between the parties.

Comment "f" of this section provides, in part, that

this Section is applicable to persons in fiduciary relationships who act honestly and reasonably for the purpose of discharging the duties that arise from the relationships. It is applicable to a trustee or an agent or *an attorney in making communications* either *to his* principal, beneficiary or *client,* or to a third person, *if the communication is made in a reasonable effort to protect the interest that is entrusted to him.* (Emphasis added.)

In *Ling v. Whittemore,* 140 Colo. 247, 343 P.2d 1048 (1959), the Supreme Court of Colorado addressed the issue of qualified privilege. Therein, the court recognized that

depending upon the circumstances, one has a privilege to communicate in good faith printed or written matter to another notwithstanding that it is defamatory where the publisher is promoting a legitimate individual, group or public interest. *Id.* at 1049.

See *Coopersmith v. Williams*, 171 Colo. 511, 468 P.2d 739 (1970).

In the *Denver Public Warehouse* case the court held

"A privileged communication is an exception to the rule that every defamatory publication implies *malice*. A qualified privilege is extended to a communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty either legal, moral or social, if made to a person having a corresponding interest or duty, and the burden of proving the existence of malice is cast upon the person claiming to have been defamed. . . ." 83 P. at 132.

Similarly, the Supreme Court of Colorado, in *Bereman v. Power Publishing Co.*, 93 Colo. 581, 27 P.2d 749 (1933), said

In *Melcher v. Beeler, supra*, we said at page 241 of 48 Colo. [233], 110 P. 181, 184: " . . . a communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains incriminatory matter, which without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect application [obligation]."

2. The communication being qualifiedly privileged, no right of action arose unless the publishers were actuated by express malice, and the burden of proving express malice was on the plaintiff. The presumption is that the communication was made in good faith and without malice. . . . *Id.* at 751.

■ Since the question of privilege is entirely one of law, I hold that the statements made by defendant Burns in the case at bar to Mr. Phil Anschutz, president of The Anschutz Corporation and to Mr. Warren Rush, the "bankruptcy lawyer" for plaintiff Williams, are the subject of privileged communications. *See Kruse v. Rabe*, 80 N.J.Law 378, 79 A. 316 (1910). *See also*

*New York & Porto Rico S. S. Co. v. Garcia*, 16 F.2d 734 (1st Cir. 1926); *Shoemaker v. Friedberg*, 80 Cal.App.2d 911, 183 P.2d 318 (1947). The determination of whether that privilege is abused by express malice and consequently lost is a question of fact for the jury. *See Denver Public Warehouse Co., et al. v. Holloway, supra.*

The Restatement of Torts 2d § 600 sets forth, in part, that "one who upon an occasion giving raise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity." In *Dixson v. Newsweek, Inc.*, 562 F.2d 626 (10th Cir. 1977), the court noted that

Colorado has defined reckless disregard as "an act destitute of heed or concern for consequences, especially foolishly heedless of danger; headlong, rash; without thought or care of consequences."

Similarly, in *Kansas Electric Supply Company, Inc. v. Dun and Bradstreet, Inc.*, 448 F.2d 647 (10th Cir. 1971), wherein defendant made a false statement in a credit report sent to subscribers, the Tenth Circuit held that it was properly a question for the jury as to "whether under all of the circumstances D & B acted in a willful, wanton and reckless manner as concerns the plaintiff . . . ." *Id.* at 650.

In his second amended complaint plaintiff specifically alleges that the defamatory statements were published by defendant Burns with reckless disregard as that term has been defined by the Supreme Court of Colorado. Accordingly, the motion to dismiss the first and fourth claims for relief is denied. Defendant Burns' motion to dismiss the fourth claim for relief on the ground that it is barred by the applicable statute of limitations is without merit. C.R.S.1973, 13–80–102. *See Walker v. Associated Press*, 160 Colo. 361, 417 P.2d 486 (1966).

Defendant The Anschutz Corporation has moved to dismiss on the grounds that it is not liable as a matter of law for any publi-

cation of defamatory matter made by its retained outside counsel, defendant Burns. Plaintiff relies on the doctrine of *respondeat superior* in support of his claim that The Anschutz Corporation is vicariously liable for defamatory statements made by its "agent."

Plaintiff has alleged that defendant Burns, at the time he made the alleged defamatory statements, was either acting within the scope of his employment under his employer, defendant The Anschutz Corporation, or was acting as the authorized agent of said defendant. Plaintiff further claims that by specifically requesting defendant Burns to make inquiries regarding plaintiff and plaintiff's ability to produce the rigs and barges for sale and to report said results to Mr. Phil Anschutz, that defendant The Anschutz Corporation specifically authorized the acts which are the subject matter of this lawsuit.

■ The real issue here is whether an attorney at law who has been retained as outside counsel to render legal services on matters specified by a client is an employee or agent of that client within the meaning of *respondeat superior*. I conclude that he or she is not.

The Restatement of Torts 2d § 254 provides:

> A principal is subject to liability for a defamatory statement by a servant or other agent if the agent was authorized, or if, as to the person to whom he made the statement, he was apparently authorized to make it.

The Restatement acknowledges that a corporation may be liable for slander by its servants or agents. Restatement of Torts 2d § 247, Comment b. In *Hooper-Holmes Bureau v. Bunn*, 161 F.2d 102 (5th Cir. 1947), the court held:

> A servant under a duty to gather information on the wrongful conduct of another person subjects his corporation to liability for malicious statements made in connection with his employment and with a purpose to serve it. *Id.* at 104–05.

In the *Hooper-Holmes* case defendant was engaged in the business of making reports to insurance companies and prospective employers on "the financial standing, health, character, and reputation of applicants for insurance, credit or employment, and upon claimants under insurance policies." *Id.* Defamatory statements were published to the corporation by one of its investigators. It is important to note that the investigator never sent reports directly to clients but delivered them to another employee of the corporation who checked each report for content and clarity before mailing them. There is no question that the corporation maintained control over the investigation and the report containing the defamatory statements which was ultimately submitted to the client. The doctrine of *respondeat superior* was properly invoked in finding liability on the part of the employer for the defamatory statements made therein.

■ As distinguished from a master-servant relationship, however, the torts of an independent contractor are generally the sole responsibility of that independent contractor, i. e., there is no vicarious liability on the part of the employer. The rationale for the general rule is that:

> [S]ince the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and administering and distributing it.

W. Prosser, *Law of Torts* § 71 (4th Ed.).

It must now be determined where an attorney at law fits in the above legal principles which govern the law of agency. It is appropriate to begin with the distinction that necessarily exists between retained counsel and house counsel for a corporation as it relates to the concept of vicarious liability. House counsel are full-time paid employees of a corporation who provide counsel and guidance to the officers, directors and other personnel of the company. House counsel give advice to and sometimes

represent their employers as distinguished from retained counsel who represent different clients who are not necessarily related. With that in mind, it is conceivable that a corporation could be vicariously liable for the torts of its house counsel-employee committed within the scope of his or her employment with the corporation. Control is exercised by the corporation over its house counsel through various means including in-house corporate policies, salary, budget control for operating the legal department, vacations, fringe benefits, etc., which a company does not exercise over its retained counsel. These distinctions are manifest when addressing the issue of vicarious liability. *See United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass. 1950); V. Countryman: T. Finman, T. Schneyer, The Lawyer in Modern Society 41 (2 Ed. 1976).

█ In the case at bar defendant Burns, as retained counsel, was concerned with the affairs of many clients, not just those of The Anschutz Corporation which was contemplating an investment in certain work-over drilling rigs and barges owned by plaintiff's corporation. In order to determine whether there were any legal obstacles to the effectuation of this transaction, defendant The Anschutz Corporation hired defendant Burns to employ his professional skills and legal expertise to advise the defendant corporation as to its legal status in this matter. As retained counsel, defendant Burns was to consider only those legal problems for which he was retained and was to rely on his own skill, expertise and professional judgment in advising his client. Defendant Burns was not on a salary; he did not occupy an office in the corporate buildings; and he was not directed in how to pursue his investigation of plaintiff. He was retained for his advice on a legal matter and was asked to relate this advice to Mr. Phil Anschutz, president of the defendant corporation. In every respect, defendant Burns was an independent contractor.

As an attorney licensed to practice law in the State of Colorado, defendant Burns was at all times bound by the Colorado Code of Professional Responsibility. Canon 1 of the code provides that "A lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession." Disciplinary Rule 1–102 addresses "Misconduct" on the part of a lawyer:

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

It is with these expectations that a corporate client hires a licensed attorney to service its legal needs. A client has every right to expect that conduct taken on its behalf will be carried out with that competence and integrity ideally shared by every lawyer who is licensed to practice law in the jurisdiction.

Clients are not insurers of actions taken by attorneys, despite the fact that such actions are taken on the clients behalf. An attorney's combination of education, experience and code of ethics effectively places the responsibility on him or her for any tortious or unethical conduct. The attorney's license and independent status likewise create duties owed by the attorney not only to the client but also to the public and to the courts.

█ The only basis upon which defendant The Anschutz Corporation could conceivably be liable for the alleged defamatory statements made by defendant Burns is if it either authorized or subsequently ratified defendant Burns' tortious actions. The blanket allegation that defendant The Anschutz Corporation authorized the acts complained of herein will not support the defendant corporation's liability in this case. The pleadings do not support the proposi-

tion that the corporate defendant retained an attorney to advise it on a transaction in which it was obviously interested and in the same breath authorized that attorney to make allegedly untrue statements prompted by express malice concerning the same transaction.

Similarly, there is nothing before the court which supports ratification by the defendant corporation of the acts complained of herein. In *Nunnally v. Hilderman*, 150 Colo. 363, 373 P.2d 940 (1962), the Supreme Court of Colorado stated:

> It is hornbook law that 'ratification' as that word is used in the law of principal and agent is the 'adoption and confirmation by one person *with knowledge of all material facts*, of an act or contract performed or entered into in his behalf by another who at the time assumed without authority to act as his agent. *Id.* at 942. (Emphasis added.)

There are no allegations in the second amended complaint which support the proposition that defendant The Anschutz Corporation knew the material facts concerning plaintiff. It was for that very reason that it retained defendant Burns' legal services—to get the facts and render an opinion based thereon. The fact that the defendant corporation *may* have relied on that advice does not support the contention that it knew all of the material facts and that it adopted the tortious acts alleged.

Defendant The Anschutz Corporation is not a proper party in this case and is accordingly dismissed.

Defendant Wall has moved to dismiss the third and sixth claims for relief on the ground that he cannot be held vicariously liable for the alleged malicious slander by his partner, defendant Burns. Although the Colorado Uniform Partnership Law is applicable in determining liability in this case, the exact rules of law applied to defendant Burns are to be given independent consideration with regard to defendant Wall.

In *Meekins v. Henson*, 1 All.Eng. 899, 88 A.L.R.2d 467 (Queen's Bench Division 1962), the plaintiff brought an action for libel against a partnership for a letter which was written by one of the partners in the course of correspondence between the partnership and plaintiff. Neither the defamatory nature of the letter nor the fact of publication was in dispute. After the court held the communication to be qualifiedly privileged, the jury found that the privilege exonerated the writer of the letter and another partner who was not guilty of malice. However, they did find liability on the part of a third partner whose malice had actuated the publication.

The court, in *Meekins*, distinguished liability under the doctrine of *respondeat superior* and liability pursuant to the Partnership Act. Under the former the partner is liable because he is an employer, not because he is the actor. Under the Partnership Act the non-acting partner is deemed a principal and is directly liable for acts done in the course of the partnership business by another partner. The court concluded:

> The publication must, for the reasons I have given, be regarded I think as a publication by each one of the three defendants. After careful consideration I have formed the view that in this case . . . each of the three defendants had a personal privilege with respect to the publication complained of in para 14 of the statement of claim. Both Mr. Sayers and Mr. Valder and Colonel Henson were entitled, in law, to make this publication, provided that they entertained no malice, were actuated by no malice in making the publication. By that test, Mr. Sayers and Mr. Valder did not abuse the privilege; the privilege is not destroyed so far as either of them is concerned by malice; per contra it is destroyed by proof which the jury had accepted in the case of Colonel Henson, that he was actuated by malice. *Id.* at 473.

■ Since I have ruled that defendant Burns made his publication on a privileged occasion, that privilege is personal to defendant Wall also. I have ruled that it is for the jury's consideration to determine whether defendant Burns abused his privilege by making the alleged statements "in a

manner which evidenced malice and a reckless disregard for the truth of the statements, and was destitute of heed or concern for consequences, . . . ." The same determination must be made with regard to defendant Wall, i. e., it must be determined whether defendant Wall was actuated by "malice," as that term has been defined by the Supreme Court of Colorado. Although it is alleged that defendant Wall understood the nature of the specific work being performed for defendant The Anschutz Corporation; and that defendant Wall authorized such work and the defamatory statements made thereto, there is a noticeable absence of facts alleging any "malice" on his part.

Furthermore, ratification by defendant Wall is not an issue in an action for slander.

> While one may render himself liable by ratifying the tort of another, such liability arises only where the original act was done in the interest, and intended to further some purpose, of the person who ratifies the act of the wrongdoer. . . . Even if a slander can, in contemplation of law, be uttered, without authority, in the interest of another, or if a benefit can be received from a slander uttered in one's behalf, such interest or benefit would generally, if not in every case, be so remote that a legal investigation should not be entered into for the purpose of connecting the interest or benefit with the slander.

*Page v. Citizens' Banking Co., et al.,* 111 Ga. 73, 36 S.E. 418 (1900).

Accordingly, it is

ORDERED that defendant Wall's motion to dismiss the third and sixth claims for relief is granted; that defendant The Anschutz Corporation's motion to dismiss the second and fifth claims for relief is granted; and that this complaint and civil cause of action as to both defendants Wall and the Anschutz Corporation is dismissed for failure to state a claim upon which relief can be granted.

Defendant Thomas M. Burns shall answer or otherwise plead to the complaint filed herein on or before twenty (20) days from the date hereof.