**David G. WILLIAMS, Plaintiff,**

v.

**Thomas M. BURNS, Peter J. Wall and the Anschutz Corporation, Defendants.**

**Civ. A. No. 78–K–260.**

United States District Court,
D. Colorado.

June 7, 1982.

Julius Glickman, Houston, Tex., Bruce Pringle, Baker & Hostetler, Denver, Colo., for plaintiff.

Jay L. Gueck, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a diversity action. The plaintiff, David Williams, was president and sole shareholder of the Atchafalaya Workover Contractors Corporation and he wanted to sell certain drilling rigs and barges. The defendant, Thomas Burns, was the attorney for a potential buyer of the rigs and barges, the Anschutz Corporation. The plaintiff alleges that the defendant made false and malicious statements to the Anschutz Corporation's president, Phil Anschutz, indicating that the corporation should not buy the plaintiff's equipment and suggesting that the plaintiff was not conducting business in good faith. As alleged, the defendant's actual statements were:

a. "That these rigs were not owned by Mr. Williams and had been sold at the bankruptcy sale."

b. "The fraud was that Mr. Williams was going to get this $450,000 as a part of this transaction and put it in his own pocket to the detriment of about $400–600,000 worth of unsecured creditors who were going to get nothing."

c. "Good Lord, I have just found out that these drilling barges are subject to the bankruptcy court and that they have been sold by order of the bankruptcy court; and I have also found out there is a whole bunch of unsecured creditors in that bankruptcy."

d. "I don't understand what Williams is trying to do, but my advice as your attor-

ney is to have no more dealings with him."

e. "That is the frosting for the cake."

f. "It looked to me like there was fraud."

g. "Leasco and the First National Bank of Chicago had bought them on February 10, 1977, on the courthouse steps."

In addition, the plaintiff alleges that the defendant made false and malicious statements to the plaintiff's bankruptcy lawyer, Warren Rush, impugning the plaintiff's business reputation and reputation for veracity. These statements, as alleged, were:

a. "He's a crook."

b. "He's trying to defraud the creditors."

c. "He lied to me."

d. "He's trying to screw the creditors."

The plaintiff alleges that both sets of the defendant's statements are actionable under the common law torts of slander, disparagement, tortious interference with contractual relations, tortious interference with a prospective business relation and breach of fiduciary duty.

This case is now before me on the defendant's motion for summary judgment pursuant to Rule 56(b) F.R.Civ.P. The defendant alleges that there are no triable facts on the plaintiff's slander and disparagement claims because: 1) The defendant's statements are absolutely privileged; 2) there is no "malice" by the defendant; 3) the statements are true; 4) the statements to Warren Rush were invited; 5) the statements are not actionable as slander; and 6) the plaintiff has not incurred any damages. The defendant further alleges that the tortious interference with contract claim is defective because there was no contract; the tortious interference with prospective relations claim is inadequate because the defendant was privileged to interfere with such relation; and that the breach of fiduciary duty claim is insufficient because the plaintiff and defendant were not in a confidential trust relationship.

For the reasons expressed in this opinion, the motion for summary judgment is granted in part and denied in part.

## I. SLANDER AND DISPARAGEMENT

The defendant draws no distinction between the torts of slander and disparagement for the purpose of his motion for summary judgment. While these torts are similar, their purposes and elements are not identical. Accordingly, where appropriate, I will analyze these torts separately.

It is axiomatic that defamation which is oral is slander and that which is written is libel. Originally enforced to protect personal reputation, the law of defamation was extended several centuries ago to the protection of property through adoption of the doctrine of slander of title. Initially recovery in such an action was limited to falsehoods injurious to the ownership of land. More recently, courts have recognized recovery for injury to personal property and to any interference with the plaintiff's business resulting in some form of customer diversion. The word "disparagement" has been used to describe these various kinds of interference with commercial or economic relations through injurious falsehoods. *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F.Supp. 1219, 1234 (D.Colo. 1976) *Modf'd on other grounds* 561 F.2d 1365 (10th Cir. 1977) *cert. dism'd* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

The elements of a cause of action for defamation (slander or libel) are: 1) A defamatory statement concerning another; 2) published to a third party;[1] 3) with fault amounting to at least negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *See Restatement of the Law of Torts 2d* section 558 (1979).[2] The elements

---

1. I have already held that the defendant's statements were publications. *See Williams v. Burns*, 463 F.Supp. 1278, 1280–82 (D.Colo. 1979).

2. I have deliberately omitted sections from the restatement's elements of defamation. The restatement indicates that a cause of action for defamation includes, apart from what I have

of a cause of action for disparagement or injurious falsehood are: 1) a false statement; 2) published to a third party; 3) derogatory to the plaintiff's title to his property or its quality, or to his business in general or to some element of his personal affairs; 4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest or either recognized or should have recognized that it was likely to do so; 5) which the defendant published with "malice;"[3] and 6) special damages to the plaintiff resulting from the statement. *See* Rest.2d at sections 623A, 624; *see also* Prosser, *The Law of Torts* section 129. P. 919–922 (4th ed. 1971).

## A. PRIVILEGE

■ The defendant's first argument is that all of his statements are protected by an attorney's absolute privilege to communicate with his clients. While privilege is

already listed, a *false* statement and an *unprivileged* publication. Since in Colorado, truth and privilege are affirmative defenses which the defendant must plead and has the burden to prove by a preponderance of the evidence at trial, they are not necessary elements of a plaintiff's cause of action. *See Colorado Jury Instructions-Civil* sections 22:10, 22:11 (1969).

3. The precise type of "malice" that is required to sustain a cause of action for disparagement is an open question. There are different types of "malice" which courts have used in disparagement actions. Aside from the knowledge of the falsity or reckless disregard for the truth standard which is now constitutionally mandated in public figure defamation actions, see *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a publisher of a disparagement or injurious falsehood was also held subject to liability if: 1) He was motivated by ill will toward the other (malice in the factual sense); or 2) he intended to interfere with the interests of others in an unprivileged manner (intent to harm). *See* Rest.2d at section 623A, Comment d, P. 338. The interaction of the common law bases of liability in disparagement and the constitutionally mandated mental states in defamation actions raises several perplexing questions. For example, the Supreme Court's First Amendment defamation cases from *New York Times* to *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), require either the knowledge or reckless disregard standard in public cases or at least negligence in private actions. Accordingly, the last two common law sources

an affirmative defense to both slander and disparagement actions, see Rest.2d at sections 585–595A, 635–650A, I am unaware of the existence of such an absolute privilege.[4] Further, as previously mentioned I have already held that the defendant is protected by a qualified privilege for protecting the interests of others. *Williams v. Burns,* 463 F.Supp. 1278 at 1282–83. However, since such a privilege is qualified, it is defeasible upon a showing of malice. *Id.; Walker v. Hunter,* 86 Colo. 483, 489, 283 P. 48 (1929).

## B. MALICE

■ The defendant further asserts that his supporting evidentiary materials conclusively establish his absence of malice. The defendant's sworn affidavit indicates that he made certain investigations about the plaintiff and received information from another attorney which suggested that the plaintiff had been making representations

of "malice" in disparagement actions would be insufficient under the First Amendment if the defamation precedents are held applicable to disparagement actions. Further, since negligence has never been a sufficient basis of liability in disparagement actions the application of common law principles might require proof of negligence and either ill will or intent to harm in private disparagement actions. However, I need not decide these perplexing questions in the instant case since I have already held that the defendant may invoke a qualified privilege defense for protecting the interests of others. *See Williams v. Burns,* 463 F.Supp. at 1282–83. Because privileges are defeasible only upon a showing of the first type of "malice"—knowledge or reckless disregard—the plaintiff must prove this type of "malice" in order to sustain his burden of proof. This type of malice is sufficient under both the First Amendment and the common law of disparagement.

4. Rest.2d at section 586 provides an absolute privilege for attorneys to publish defamatory or disparaging matter in connection with judicial proceedings if the statements bear some relation to the proceedings. This privilege is clearly inapplicable to the instant case. Further, the attorney-client privilege which pertains to a privilege from judicial disclosure of confidential communications between attorney and client, is also not applicable here where the communication has already been disclosed. *See United States v. Bump,* 605 F.2d 548, 550–51 (10th Cir. 1979).

regarding the proposed transaction. While the defendant's evidentiary materials are persuasive and the plaintiff has failed to come forward with counter-affidavits and evidence, summary judgment on this point is, nevertheless, improper.

When a moving party's affidavit raises subjective questions such as motive, intent or conscience, there may have to be a trial even where the non-moving party fails to present counter-affidavits since cross-examination is the best means of testing the credibility of this type of evidence. Wright & Miller, *Federal Practice & Procedure: Civil*, section 2727, P. 534 (1973).

In *Somers Construction Co. v. Board of Educ. for the So. Gloucester Country Regional High School District*, 198 F.Supp. 732 (D.N.J.1961), the district judge denied the defendants' motion for summary judgment in an action with relevant facts that are virtually identical to those in the instant case. In *Somers*, the plaintiff was a contractor who sought to recover for tortious interference with a prospective business relation, against architects for their alleged malice in advising the board of education to deprive the plaintiff of a school construction contract. The defendants moved for summary judgment and attached affidavits in which the defendants "categorically denied" such malice and otherwise "effectively negated" the plaintiff's claims of malice. *Id.* at 739. Notwithstanding the plaintiff's failure to come forward with counter-affidavits, the district judge denied the defendants' motion. He stated:

> When the fact sought to be established by an affidavit in support of a motion for summary judgment involves the state of mind or motive of a person . . . summary

judgment is particularly inappropriate and must be denied.

*Id.* Accordingly, the defendant's motion for summary judgment on this point is denied.[5]

## C. TRUTH

The defendant also claims that all of his statements are true. In determining whether statements are true, the entire conversation or writing must be viewed as a whole. Prosser at section 111, P. 748. The plaintiff may not lift words or statements out of their context and the defamation contained in one statement may be negatived or explained away by what appears elsewhere. *Id.* Moreover, the defendant need not establish the literal truth of the statement; "it is sufficient to show that the imputation is substantially true, or as is often put, to justify the 'gist' or the 'sting' or the 'substantial truth' of the defamation." *Id.* at section 116, P. 798.[6]

Further, a statement or statements may be a characterization of a person that expresses the maker's unfavorable judgment upon the conduct of that person. If this unfavorable comment implies the existence of facts that justify the terms in which he has described the person, it is the truth of those facts that must be proven to establish a truth defense. Rest.2d at 581A, Comment c, P. 236.

Taking these considerations into account, I find that the "gist" or "sting" of the statements in the instant case, viewed non-literally and as a whole, imply that the plaintiff misrepresented himself and acted fraudulently in his dealings surrounding the proposed sale of the rigs and barges. To the extent the defendant can prove under-

---

5. The defendant's reliance on Colorado case law as authority for the appropriate standards for granting a motion for summary judgment pursuant to Rule 56, F.R.Civ.P., is misplaced. "The question of whether a federal court should grant summary judgment is basically a question of federal law. In a diversity action it is admittedly state law which defines the cause of action. Nevertheless, the effect of affidavits on a well pleaded claim for relief, whether the non-moving party must come forward with counter-affidavits or suffer summary judgment

and related questions are *procedural in nature* and therefore must be resolved by (federal law)." (Emphasis in original) *Somers Const. Co.*, 198 F.Supp. at 739; *See generally Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

6. For example, I daresay that the defendant need not prove that the plaintiff tried to "screw" all of the creditors, in order to establish the defense of truth; a few will suffice.

lying facts to establish the plaintiff's fraudulent conduct, he will be entitled to a truth defense. However, the evidentiary materials already presented are insufficient to justify summary judgment.

A determination whether the plaintiff engaged in fraudulent conduct also involves a search into issues of motive, intent and credibility, the resolution of which is generally inappropriate on a motion for summary judgment. Moreover, a court should deny summary judgment unless the facts have been sufficiently developed to enable it to be reasonably certain that it is making the correct determination. *See N.L.R.B. v. Smith Industries, Inc.*, 403 F.2d 889, 893 (5th Cir. 1968). While the defendant has presented significant evidence suggesting that the plaintiff's dealings were not entirely candid, I am loathe to grant summary judgment until the "whole factual structure stands upon a solid foundation of a plenary trial where proof can be fully developed, questions answered, issues clearly focused and facts definitively found." *Petition of Bloomfield S.S. Co.*, 298 F.Supp. 1239, 1242 (S.D.N.Y.1969) *aff'd* 422 F.2d 728 (2d Cir. 1970). Accordingly, the motion for summary judgment on this point is denied.

### D. INVITATION

■ The defendant also asserts that the plaintiff invited the statements made to the plaintiff's bankruptcy lawyer, Warren Rush. As I noted in my previous opinion, a communication to an agent of a person defamed is a publication but if the communication is in answer to a letter or request from the other or the agent, the publication may not be actionable in defamation. *Williams v. Burns*, 463 F.Supp. at 1281; *see also Melcher v. Beeler*, 48 Colo. 233, 247–48, 110 P. 181 (1910) ("Alleged defamatory statements invited or procured by a plaintiff or a person acting for him, will not support an action for libel.") In such circumstances the party claiming to be defamed by a communication in response to a

request regarding him has invited the commission of a wrong and will not be heard to complain that he was defamed. *Melcher*, 48 Colo. at 248, 110 P. 181. This rule is also applicable to disparagement actions. *See* Rest.2d at section 630.

■ The defendant's uncontroverted affidavit establishes that the plaintiff made his statements to Rush after Rush, acting on behalf of the plaintiff, contacted the defendant and asked him why discussions had been terminated. I hold that the plaintiff, through his agent Rush, invited the defendant's statements to Rush. Accordingly, the defendant's motion for summary judgment on the plaintiff's slander and disparagement claims based on those statements, is granted.

### E. ACTIONABILITY OF THE STATEMENTS

■ The defendant next claims that the alleged defamatory statements are not actionable as slander because mere words of abuse do not constitute slander *per se*.[7] *See Cinquanta v. Burdett*, 154 Colo. 37, 40, 388 P.2d 779 (1963) *Reh'g denied* (1964). However, statements need not be slanderous *per se*, or on their face, in order to sustain a cause of action. Where statements are defamatory on their face, the law merely presumes that the plaintiff incurred some damages and it therefore exempts such a plaintiff from the requirement of proving damages. Slander *per se* involves certain categories of statements which are of such a nature that injury to reputation is presumed and the jury is authorized to estimate the amount of that injury. *See Big O Tire Dealers, Inc.*, 408 F.Supp. at 1233.

■ Where statements are not defamatory on their face, a plaintiff may nevertheless maintain a cause of action for slander so long as he can prove special damages. These required damages are "special" in the sense that they must be supported by specific proof. *See* Prosser at P. 760.

---

**7.** This argument is apparently only directed to the plaintiff's slander claim and not to his disparagement cause of action.

A slander which ascribes to another conduct, characteristics or conditions incompatible with the proper exercise of his business or professional conduct is slander *per se*. *Big O Tire Dealers, Inc.*, 408 F.Supp. at 1233, 1234. However, an accusation of a single act or transaction of business misconduct is not actionable *per se* unless it fairly imputes either habitual conduct or lack of qualities which the public has a right to expect of the plaintiff in his calling. Prosser at P. 759.

I have dismissed the claims based on the statements to Rush. I find that the import of the remaining statements are primarily confined to the single transaction in question regarding the rigs and barges. Accordingly, these statements are not actionable *per se* and require proof of special damages.

### F. DAMAGES

The defendant also claims that his supporting evidentiary materials conclusively establish the absence of damages to the plaintiff. In disparagement actions, the plaintiff must always plead and prove special damages. *See* Prosser at P. 922; *but see Big O Tire Dealers, Inc.*, 408 F.Supp. at 1235. Special damages available in both defamation and disparagement actions, can include loss of prospective or actual customers or sales to the plaintiff and expenses necessary to counteract the defamation or disparagement. Prosser at Pp. 760–61, 922–24. Once a defamation plaintiff shows special damages or pecuniary loss, he may then recover for more general items of damage such as mental distress, humiliation and mental suffering. However, mental suffering is specifically excluded as an element of damages in a disparagement cause of action. *Id.*

Here, the defendant claims that summary judgment on damages is appropriate because the plaintiff has not come forward with evidence of damages. However, summary judgment in this context is inappropriate unless the defendant comes forward with evidence negativing all potential sources of damages. This he has not done.

Moreover, the defendant's evidentiary materials are sketchy and inconclusive. For example, the defendant cites the Anschutz Corporation's president, Phil Anschutz' affidavit where Anschutz stated that the decision to terminate negotiations with the plaintiff was based upon a multitude of factors and the information from the defendant was therefore not dispositive. However, the mere fact that Anschutz considered the defendant's statements in determining whether to negotiate with the plaintiff raises a genuine issue of fact as to the extent to which the statements caused the loss of the sale. Accordingly, the defendant's motion for summary judgment on this point is denied.

### II. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

There are five specific elements of the tort of intentional interference with performance of a contract by a third person: 1) existence of a valid contract between the plaintiff and a third party; 2) knowledge by the defendant of the contract or knowledge of facts which should lead him to inquire as to the existence of the contract; 3) intent by the defendant to induce or cause the third party not to perform; 4) action by the defendant which induces or causes non-performance of the contract; and 5) resulting damage to the plaintiff. *See Comtrol Inc. v. Mountain States Tele. & Tel. Co.*, 32 Colo.App. 384, 513 P.2d 1082, 1084 (Colo.App., 1973). Since the plaintiff has failed to allege or present any evidence of an existing contract, the defendant's motion for summary judgment on this claim is granted.

### III. TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATION

To prove tortious interference with a prospective business relation it is not necessary to prove an underlying contract; it is sufficient to show intentional and improper interference preventing formation of a contract. *Dolton v. Capital Savings and*

*Loan Assoc.,* 642 P.2d 21 (Colo.App., 1981), *Reh'g denied* October 8, 1981 *Review denied* March 8, 1982. One who without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another is liable to the other for the harm caused thereby. *Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47, 51 (10th Cir. 1963).

■ The defendant in the instant case claims that he was privileged to interfere with such a prospective relation under the previously stated privilege to protect the interests of third parties applicable to defamation and disparagement. This privilege is also a defense to actions for intentional interference with prospective business relations. *See* Prosser at 953–54. However, since there is a triable issue of fact whether the defendant acted with malice and thereby abused the privilege, the defendant's motion for summary judgment on this claim is denied.

## IV. BREACH OF FIDUCIARY DUTY

■ A cause of action for breach of fiduciary duty arises when a party breaches a confidential trust relationship with another. A confidential trust relationship arises when one party justifiably reposes confidence in another. *Page v. Clark,* 197 Colo. 306, 316, 592 P.2d 792 (1979). However, there are limits on the confidential trust relationship concept. *See Donovan v. Gingerbread House,* 536 F.Supp. 627, at 630–631 (D.Colo., 1982) where I refused to extend the confidential trust relationship concept to permit a cause of action for breach of fiduciary duty by an employer against a part-time teenage employee.

I am unaware of any authority, nor has the plaintiff provided any, indicating that the relationship between a potential seller and the attorney for a potential buyer is a confidential trust relationship which could give rise to a cause of action for breach of fiduciary duty. Accordingly, the defendant's motion for summary judgment on this claim is granted.

IT IS HEREBY ORDERED that the defendant's motion for summary judgment on the plaintiff's defamation and disparagement claims predicated on the defendant's statements to Warren Rush, is granted.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment on the plaintiff's claims for tortious interference with contractual relations and breach of fiduciary duty, is granted.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment is in all other respects, denied.

IT IS FURTHER ORDERED that the parties shall submit proposed jury instructions, relying on my two opinions in this case as much as is practicable, within ten (10) days from the date of this order.