## No. 22866.

WILLIAM C. COOPERSMITH *v.* WAYNE D. WILLIAMS.

(468 P.2d 739)

Decided May 4, 1970.

512

CHARLES GINSBERG, RICHARD OTT, for plaintiff in error.

VANCISE, FREEMAN, TOOLEY & EASON, EDWIN P. VAN-
CISE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THIS was a libel action brought by the plaintiff in error (plaintiff) against the defendant in error (defendant) to recover $200,000 compensatory and $100,000

exemplary damages. At the conclusion of the plaintiff's case, the trial court directed a verdict in favor of the defendant. We affirm.

This matter arose during a period in which a number of Denver policemen were charged with burglary and wide publicity was being given to the cases by the news media. The plaintiff was one of the policemen so charged in December 1961, and was later acquitted.

A Boy Scout bus trip to Alaska was scheduled for the summer of 1962. A corporation, "Scouts Travel Unlimited, Inc.," was created for the purpose of sponsoring this trip. The plaintiff was to be one of the adult leaders on the trip. The defendant, an attorney, had a 15-year-old son who planned to go on the trip.

Trial of the criminal charges pending against the plaintiff was set originally for May 29, 1962, a week or so prior to the commencement of the trip. (Actually, the plaintiff's criminal trial did not take place until September 1963; and the trial of the instant action was in November 1966.) For some time prior to March 29, 1962, the defendant had understood that the plaintiff would not be going on the trip. However, on the evening of March 29th, at a meeting of parents of boys going on the trip, it was announced that plaintiff would in fact be one of the leaders. The defendant made no comment at the meeting. The following day he made some investigation as to the case against the plaintiff, and then wrote a letter to a director of the corporation, who was the chairman of the trip project. This letter read as follows:

"I am writing to make the strongest possible protest against any further plans to include William C. Coopersmith in any way in the plans for "Operation Alaska," whether as driver or helper, on the trip or on the preparatory overnights, or merely as an associate of some sort travelling the same itinerary as the boys will travel, or hauling any of the equipment.

"I have no desire to make trouble for the operation, and I am very anxious to have my son be a part of it. I will

be glad to help, and I know any of the parents will be glad to help, to obtain a competent and capable substitute for Mr. Coopersmith.

"Mr. Coopersmith is a suspended Denver policeman facing trial upon charges of felony growing out of a burglary of approximately $1,000.00 worth of appliances from a warehouse on Market Street. His case is No. 49190 in the Denver District Court, and it is set for trial on May 29, 1962. I am informed that the prosecution will present two persons who claim to be eyewitnesses to Mr. Coopersmith's participation in this crime. They are Gerald Sanford, an ex-policeman already convicted and under sentence, and Sidney Long, another ex-policeman.

"If Mr. Coopersmith is convicted, it will be necessary to find someone to take his place on very short notice. If he is found innocent, we would then find ourselves sending our boys on a six weeks' trip with a man about whom very incriminating testimony will have been given in open court within three weeks of departure. The fact that Mr. Coopersmith is very good in handling boys and very capable and likeable only increases my concern. The net impression on the boys is likely to be that a person can be quite a fine man and still possibly commit a burglary once in a while, and that this same view is shared by their parents.

"In short, it will make no difference in my mind whether Mr. Coopersmith is found guilty or not. He would be an unsuitable person to have any connection with "Operation Alaska" in either event.

"I would be glad to meet with the committee for "Operation Alaska" to discuss this problem further, and to render any possible assistance in obtaining a replacement for Mr. Coopersmith. In my opinion, it is vitally important that a final decision should be made on this particular matter before April 15."

The defendant transmitted copies of the letter to the other officers and directors of the corporation and to the Area Boy Scout Executive. The plaintiff filed the action

against defendant on April 11, 1962, 12 days following transmittal of the letter.

We observe that, of the six paragraphs in the defendant's letter, only the third paragraph sets forth purported facts concerning the plaintiff. The remainder of the letter contains the defendant's opinions.

The plaintiff's case consisted of the following: The letter; cross-examination of the defendant; testimony of three acquaintances of the plaintiff solely to the effect that the plaintiff had a good reputation; and testimony of the plaintiff. There was nothing in the testimony of the defendant which would indicate malice on his part nor were there shown any circumstances from which malice might be inferred. On the contrary, he emphasized that he did not bear malice toward the plaintiff and was acting solely in the interest of his son and other boy scouts in the group.

The direct examination of the plaintiff consumed only three folios in the record. That testimony was *solely* to the following effect: that the plaintiff was 39 years old, was married and had four children: a girl, 16, a girl, 12, a boy, 6½, and a boy, 2; that he was charged with six counts of burglary, of which two were dismissed and on trial he was acquitted of the remaining four charges; that he was suspended from police duty pending the trial and after the trial was reinstated to service, which status has continued.

There was no evidence that any of the statements in the letter were false. The effect of the plaintiff's testimony on cross-examination was that practically all of the factual material in the letter was true.

The trial court found and concluded that, absent privilege, the letter contained statements that a jury might find defamatory, citing *Morley v. Post Printing and Pub. Co.*, 84 Colo. 41, 268 P. 540; that the letter was a privileged communication under authority of *Ling v. Whittemore*, 140 Colo. 247, 343 P.2d 1048; that, there being no evidence of malice beyond the letter itself, there

is a presumption that the communication was made in good faith and without malice, again citing *Ling, supra,* and *Morley, supra.* Without commenting upon the court's finding that, absent privilege, the matter should have been submitted to the jury, we concur completely with the findings and conclusions of privilege, lack of evidence of malice and presumption in favor of the defendant.

■■ In *Ling, supra,* Justice Doyle gave such an excellent exposition on the doctrine of qualified privilege, and presented such a thorough review of the authorities, that for us to expound further on this doctrine would merely be an attempt to "add another hue unto the rainbow," with — as the Bard concluded — resulting "wasteful and ridiculous excess." To paraphrase a quotation contained in his opinion, a qualified privilege is extended to a communication upon any subject in which the communicating party has a legitimate interest to persons having a corresponding interest. In such a situation the burden of proving the existence of malice passes to the person claiming to be defamed. Without question the defendant's letter comes within the scope of qualified privilege. A father's concern for a 15-year-old son on an extended trip is not only a matter of legitimate interest, but usually is the subject of considerable anxiety.

■ Such being the case, the plaintiff, in order to recover, had the burden of showing malice on the part of the defendant. This leads our attention to the issue of whether malice might or might not be inferred from the testimony, which is one solely for the jury; and, if not, to the issue of whether the extent of evidence here justified the directed verdict.

■■ The plaintiff has argued vigorously that we cannot pass on the question of sufficiency of the evidence and that the question necessarily had to be submitted to the jury. We have read each of the several authorities cited by the plaintiff and find them completely distinguishable with the exception of *Koch v. Wright,* 67 Colo. 292, 184 P.363. *Koch* supports the proposition that, when

there is no evidence of malice, the court should direct a verdict. More in point is *Bereman v. Power Pub. Co.,* 93 Colo. 581, 27 P.2d 749, in which, after the plaintiff had been given a favorable verdict, this court reversed and ordered the suit dismissed for the reason that there was no evidence of malice to go to the jury. Similarly, here there was no evidence of malice and no showing of circumstances from which malice might be inferred. As indicated, the plaintiff had absolutely no testimony on the subject. He relies on the contents of the letter. This is not sufficient. *Bereman v. Power Pub. Co., supra, Melcher v. Beeler,* 48 Colo. 233, 110 P. 181.

The plaintiff has assigned two additional matters of error. One involves certain testimony on redirect examination of the defendant immediately following plaintiff's cross-examination of defendant as an adverse party. For the limited purpose of negating malice, the court permitted the defendant to testify as to statements made by two persons at the meeting on March 29, 1962, by which defendant first learned that plaintiff was going to be a leader on the trip. The plaintiff urges that this violated the hearsay rule.

The other objection concerns the action of the trial court in admitting in evidence defendant's requests for admission served on plaintiff long before trial, and to which plaintiff had made no response. We are unable to find any statement by the court that it did admit the requests. The court did make an observation to the effect that most of the matters involved were already in evidence. However, we treat the matter as if the court had admitted the requests in evidence.

It is amply apparent from the record that the court made its findings independently of the so-called hearsay statements and of the requests for admission. We have excluded these matters from our own consideration of the case. We doubt that any error was committed, but, without passing on that point, we hold that in connection

518

with the directed verdict the plaintiff was not prejudiced thereby.

Judgment affirmed.

MR. JUSTICE PRINGLE, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.