Argued July 9, affirmed September 9, 1975

LEE, *Appellant, v.* PAULSEN ET AL, *Respondents.*

539 P2d 1079

*Rex Smith,* Portland, argued the cause for appellant. With him on the briefs were Mark McCulloch and Powers & McCulloch, Portland.

*James H. Gidley,* argued the cause for respondents. With him on the briefs were Cosgrave & Kester, Portland.

DENECKE, J.

The plaintiff teacher brought this defamation action against the defendants who are school officials and school board members. The trial court granted defendants' motion for an involuntary nonsuit upon the ground that the publication was absolutely privileged.

The plaintiff was a nontenured teacher. He was notified his contract was not going to be renewed. Plaintiff's attorney wrote the school district's attorney asking to be provided with the specific reasons for the nonrenewal of the contract and for a public hearing. The district's attorney replied by letter furnishing the specific reasons. He further stated that no evidence would be provided by the district at the hear-

ing and no school officials or board member could be questioned. Plaintiff read this letter.

At the public hearing or meeting the plaintiff's attorney requested that the reasons, as contained in the letter sent to him, be stated by the board. The statements were made and this publication is charged as defamation. We will assume for the purposes of this decision that the publication is defamatory.

■ The cases and scholars agree that there is an absolute privilege for publications that are consented to. § 583 of the Restatement of Torts provides: "Except as stated in § 584, the publication of false and defamatory matter of another is absolutely privileged if the other consents thereto."

■ It should be remembered that usually the question of whether or not a defamatory statement is privileged, either absolutely or conditionally, depends upon the balance that the court strikes between competing interests. In *Ramstead v. Morgan,* 219 Or 383, 387, 347 P2d 594 (1959), we held the communication involved was absolutely privileged because the relationship occasioning the communication was so important that the law freed the publishing party from liability regardless of the fact that the publishing party might use the occasion to publish defamatory and malicious statements. The important interest in *Ramstead* was having citizens communicate with the organized Bar concerning possible misconduct of attorneys. We were of the opinion that this interest was so important that the communication should be absolutely privileged.

1 Harper and James, The Law of Torts 400, § 5.17 (1956), observed that this balancing of interests is not present in cases in which absolute privilege is revoked because the plaintiff consents to or requests the publication.

"It will be noted that the * *· * privilege in these cases [consent] is outside the usual rationale of the doctrine of privilege in other situations where a fine balancing of interest and/or duty supports the immunity. The fact that he was brought within the orbit of defamation by the plaintiff's contrivance does not give to the recipient any interest he did not otherwise have."

In the consent cases Harper and James point out that no public interest is being served by encouraging publication which is free from the threat of being the subject of a defamation suit.

The reason for the imposition of the privilege when the plaintiff consents or requests the publication "is based upon the unwillingness of the courts to let the plaintiff 'lay the foundation of a lawsuit for his own pecuniary gain.'" Harper and James, supra, at 400, quoting from *Richardson v. Gunby*, 88 Kan 47, 54, 127 P 533 (1912).

Prosser states:

"One who has himself invited or instigated the publication of defamatory words cannot be heard to complain of the resulting damage to his reputation; * * *." Prosser, Torts 784 § 114 (4th Ed 1971)

*Shinglemeyer v. Wright*, 124 Mich 230, 82 NW 887, 890 (1900), illustrates this rationale. In a private conversation between the parties the defendant charged the plaintiff with stealing his wheel. Plaintiff called a policeman. When he came she told him that the defendant had accused her of stealing his wheel and, in effect, asked him to hear the defendant's version. Defendant told the officer that the plaintiff had stolen his wheel. Plaintiff brought a slander action based upon the defendant's statement to the officer.

The court held for defendant, stating:

"In regard to the statement by defendant in

the presence of the officer Henry, it was not a publication for which the law gives a remedy. She herself solicited the statement, and sent for the officer for the express purpose of having the defendant repeat the statement in his presence. It would not have been stated to him except by her invitation." *Shinglemeyer v. Wright,* supra, at p. 890, starting at 3.

■ We emphasize that in both the present case and *Shinglemeyer v. Wright,* supra, when the plaintiff requested the publication he or she knew the exact language that would be used in the publication. This knowledge is essential in order for the publication to be absolutely privileged except in the circumstances present in *Christensen v. Marvin,* decided this date.

Comment *d.* to § 583 of the Restatement of Torts states that the communication is absolutely privileged if "he know[s] the exact language of the publication * * *."

*Nelson v. Whitten,* 272 F 135 (ED NY 1921), illustrates the opposite circumstances. The plaintiff had been employed by the defendant as master of a vessel. Plaintiff asked defendant for a letter respecting his services. The defendant wrote in part:

"As to your qualifications as a captain I can say you were an excellent housekeeper—Your knowledge of navigation is exceedingly meager.

"I am so much in doubt as to your loyalty and integrity that I could not conscientiously give a recommendation to any one desiring to employ you." 272 F at 136.

The letter was published to a third party and plaintiff brought a libel action. The defendant defended upon the ground that the plaintiff had consented. The court held for plaintiff, stating, "Because of a request for such statement, plaintiff did not invite defendant to

make public anything false and defamatory." 272 F at 136.

■ In the present case the plaintiff did invite the defendant to make public a statement which plaintiff believed was false and defamatory. Defendants are absolutely privileged unless the publication falls within an exception to the rule that consent to publication creates an absolute privilege.

Plaintiff claims his case does fall within the exception stated in § 584, Restatement of Torts.

"The republication of false and defamatory matter of another by one who has previously published it is not privileged although the person defamed in an honest effort to ascertain the source of the original defamatory publication procures the republication."

The drafters of the Restatement (Second) have recommended that the section be broadened to read:

"An honest inquiry or investigation by the person defamed to ascertain the existence, source, content or meaning of a defamatory publication is not a defense to an action for its republication by the defamer." Restatement (Second), Torts, Tentative Draft No. 20 (1974) § 584, p 158.

Assuming that the recommendation made in the Tentative Draft No. 20 correctly states the law, the plaintiff's case does not fall within the exception.

Cases cited by the reporter in Tentative Draft No. 20 in support of § 584 illustrate the intent of the section.

In *Thorn v. Moser,* 1 Denio (NY) 488 (1845), plaintiff's agent had "heard that the defendant had charged this crime upon the plaintiff." 1 Denio (NY), supra, at 488. He went to the defendant to inquire and defendant repeated the charge. In affirming a judgment

for the plaintiff, the court commented: "An attempt by a person who deems himself injured to ascertain truly what slanderous imputations had already been cast upon him, could hardly be allowed to justify their renewal." 1 Denio (NY), supra, at 494. The agent's inquiry was to verify the existence and learn the content of a defamatory publication.

In *Smith v. Dunlop Tire & Rubber Co.*, 186 SC 456, 458, 196 SE 174 (1938), one of the defendants stated to the plaintiff and his manager, "By God, I thought you birds were down here getting fat off of Dunlop. Now I know it." The plaintiff said he did not understand. The defendant replied, "you have been stealing." The court held the statement was not privileged. Plaintiff's inquiry was to determine the meaning of a possible defamatory publication.

In the present case, the request to the defendants to read the reasons for failure to renew, as stated in the defendants' letter previously sent plaintiff's attorney, was not "to ascertain the existence, source, content or meaning of a defamatory publication." Tent Draft No. 20 at 158.

Plaintiff contends one purpose in having the reasons read was to get a clarification of the reason, "Unprofessional conduct toward children." That contention cannot be substantiated. The school district's attorney informed the plaintiff and his attorney well before the meeting that the defendants and other school officials would not be open to questioning or offer any further explanation.

It must be remembered that the plaintiff is contending that this reading of the reasons for the defendants' refusal to renew plaintiff, which plaintiff requested, damaged his reputation.

■ The trial court commented, in regard to plain-

tiff's attorney requesting the reading of the statement, "you had no thought of setting up for entrapment in a libel suit." As we stated, the reason behind the rule that consent creates an absolute privilege is to prevent a plaintiff from "setting up" a lawsuit. However, it is not essential that the plaintiff in a particular case have that subjective intent. *Mick v. American Dental Assn.*, 49 NJ Super 262, 139 A2d 570, 577 (1958), so held: "While we are satisfied that, resolving doubts from the evidence in favor of the plaintiff [citation] the issue as to whether plaintiff caused the Yeats letter to be sent in order to elicit a basis for the present action is for the jury, we nevertheless conclude that the action is barred on the theory of invitation or consent."

Affirmed.