Richard F. DOMINGUEZ, Petitioner,

v.

Henry A. BABCOCK; Joan N. Brooks; C. Richard Groves; Scott J. Marshall; Deborah A. Carnell; Richard S. Culver; Robert R. Faddick; Richard D. Gauthier; Mark W. Ljungvall; Dale Foreman; Robert J. Taylor; Harry C. Peterson; Karl R. Nelson; Gabriel M. Neunzert; James W. Martin; James G. Johnstone; Fred R. Leffler; William Mueller; Harry W. Emrick; the Colorado School of Mines, Respondents.

No. 84SC366.

Supreme Court of Colorado, En Banc.

Nov. 3, 1986.

James E. Goldfarb, Greengard & Senter, Denver, for petitioner.

Daniel R. Satriana, Jr., Alan Epstein, Hall & Evans, Denver, for respondents.

DUBOFSKY, Justice.

We granted certiorari in *Dominguez v. Babcock*, 696 P.2d 338 (Colo.App.1984), to consider whether the Jefferson County District Court erred in granting summary judgment to the defendants because Dominguez, the plaintiff, consented to publication of allegedly defamatory material and because Dominguez failed to establish that the publication was made with malice. The court of appeals, holding that there was a genuine factual issue concerning whether Dominguez consented to the publication of the allegedly libelous material but that Dominguez had failed to show a genuine factual issue concerning the existence of actual malice, upheld the district court's entry of summary judgment for the defendants. We affirm the judgment of the court of appeals.

I.

In June 1979, Dominguez entered into a contract with the Colorado School of Mines (CSM) for employment as a full professor and head of the Basic Engineering Department for the 1979–80 school year. Dominguez, a nontenured probationary employee,

and CSM entered a similar contract for the 1980–81 school year. In a document dated August 25, 1980, submitted to defendant William Mueller, Vice-President of Academic Affairs, eighteen faculty members of the Basic Engineering Department, all named as defendants, stated that they had no confidence in the leadership of Dominguez and requested that Dominguez be assigned to other duties for his contract period and that an interim department head be appointed. In support of their request, the faculty members noted that Dominguez had appointed himself to the summer school staff but had spent no time performing his duties, that Dominguez had appropriated the use of department equipment, gifts, secretarial services, office space, computer time and the travel budget to himself, that he was unconcerned with undergraduate students, that his assignment of teaching schedules created hardships for both faculty and students, that he had failed to consult with faculty on textbook selection and teaching assignments and had failed to create a promotion review committee, that his classroom performance was poor, that he was uninvolved in department planning, that he had threatened staff members and had hired new staff at higher salaries than existing staff while requiring existing staff to complete duties assigned to new staff members, that he was focusing on new and unauthorized departmental programs to the detriment of existing programs, and that he had difficulties working with other faculty members.

On August 25 or 26, 1980, Mueller gave Dominguez a copy of the faculty members' August 25 demand for his removal as department head. Dominguez asserts that at that time he asked Mueller "for accountability of the faculty that made the statements." Mueller testified that when Dominguez received a copy of the August 25 memorandum Dominguez asked that those who had signed the memorandum "be required to substantiate in writing or otherwise the matters that were contained in [the August 25 memorandum]." In a memorandum dated September 4, 1980, also

submitted to Mueller, the eighteen faculty members set forth a more detailed explanation of their position and made additional allegations that Dominguez abruptly canceled a thermodynamics course, assigned all student advising to one faculty member, denied requests for textbooks, failed to consider a request for promotion, and recommended a below average raise for a faculty member. Sometime between September 9 and 11, 1980, Dominguez resigned as department head but remained a faculty member in the department. On February 6, 1981, Mueller notified Dominguez that his contract would not be renewed for the following school year because of the existence of friction between Dominguez and other faculty members. After an administrative hearing on March 24, 1981, the Faculty Review Committee determined that Dominguez would not be entitled to further administrative appeal concerning nonrenewal of his contract.

On August 10, 1981, Dominguez filed a complaint in the District Court of Jefferson County, seeking damages for defamation, negligence, outrageous conduct, breach of contract, and violation of civil rights protected by 42 U.S.C. § 1983 (1982). The defendants requested summary judgment on all of Dominguez's claims, and Dominguez sought partial summary judgment on his claims for breach of contract and violation of civil rights. The district court granted the defendants summary judgment on all claims. The court found that Dominguez had consented to the publication of the September 4 memorandum. The court also ruled that Dominguez had failed to give the required notice under section 24–10–109, 10 C.R.S. (1982), with respect to the August 25 memorandum. Because of the defendants' qualified privilege with respect to the memoranda, the court held that the defendants could not be found liable for negligent action in publishing the memoranda but only for malice, which Dominguez had failed to prove, and that the defendants' behavior did not rise to the level of outrageous conduct. Finally, the court determined that Dominguez had no contractual or constitutionally protected interest in further employment and that therefore CSM's failure to follow specified procedures in not renewing the contract did not entitle Dominguez to damages. The court of appeals affirmed the district court's dismissal of Dominguez's claims, ruling that, although there was a genuine factual issue concerning whether Dominguez consented to publication of the September 4 memorandum, Dominguez failed to present sufficient evidence that the defendants acted with actual malice to survive a summary judgment motion.

II.

Dominguez asserts that summary judgment on the defamation claim was improper because his request that the faculty be accountable for the August 25 memorandum was not consent to publication of the September 4 memorandum. Section 583 of the *Restatement (Second) of Torts* (1977) provides, "Except as stated in § 584, the consent of another to the publication of defamatory matter concerning him is a complete defense to his actions for defamation." *See also Melcher v. Beeler*, 48 Colo. 233, 110 P. 181 (1910). "Consent" as used in section 583 means "willingness in fact for conduct to occur." *Restatement (Second) of Torts* § 892(1) (1979). Apparent consent, or "words or conduct ... reasonably understood by another to be intended as consent," also bars recovery. *See Restatement (Second) of Torts* § 583 (1977), *Restatement (Second) of Torts* § 892(2) (1979). Section 584, an exception to section 583, provides that "[a]n honest inquiry or investigation by the person defamed to ascertain the existence, source, content or meaning of the defamatory publication is not a defense to an action for its republication by the defamer." *Restatement (Second) of Torts* (1977). A request for reasons for another's actions, however, is consent to publication of the reasons. *Id.* § 583 comment d, illustration 2. For example, a teacher whose contract is not being renewed may verify the existence and learn the content of defamatory statements but consents to publication of defam-

atory material if he asks for the reasons for dismissal. *Lee v. Paulsen*, 273 Or. 103, 539 P.2d 1079 (1975).

■ Although consent is a complete defense to an action for defamation, *Melcher*, 48 Colo. 233, 110 P. 181; *Costa v. Smith*, 43 Colo.App. 251, 601 P.2d 661 (1979), and the question of whether communication is privileged is one for the court, *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, at 427, 494 P.2d 1287, at 1289 (1972), see part III, *infra*, consent in this case is a factual question that makes summary judgment inappropriate. Summary judgment is proper only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits fail to show that there is a genuine issue of material fact. *Roderick v. City of Colorado Springs*, 193 Colo. 104, 563 P.2d 3 (1977); C.R.C.P. 56(c). In addition, all doubts concerning summary judgment should be resolved against the moving party. *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972).

After receiving a copy of the August 25 memorandum, Dominguez testified that he asked Mueller "for accountability of the faculty that made the statements." In a written response to the August 25 memorandum, Dominguez stated that the faculty's statements were inaccurate and could not be substantiated and that the charge of appropriation of equipment, secretarial services, office space, computer time, and travel budget for personal use was a "libelous statement made without substantiation and requir[ing] either accountability by those who made it or retraction." Mueller testified that Dominguez asked for written substantiation of the matters contained in the August 25 memorandum.

■ Dominguez unquestionably asked for substantiation of the charge of appropriation of CSM property for personal use, but there is a genuine issue of material fact concerning whether Dominguez requested substantiation of the other statements in the August 25 memorandum, and, if so, whether such a request constituted

consent to the September 4 memorandum. Moreover, the September 4 memorandum contained both substantiation for the August 25 memorandum and additional allegations. Consent is a defense to an action for defamation only to the extent of that consent. *See Lee*, 273 Or. 103, 539 P.2d 1079; *Restatement (Second) of Torts* (1977), § 583 comment d. Summary judgment on the issue of consent, therefore, was improper.

## III.

### A.

Dominguez, by his assertion that summary judgment was improper on the basis that whether the words were published maliciously or in reckless disregard of his rights depends on the credibility of the defendants, implicitly concedes that the September 4 letter was subject to a qualified privilege. The September 4 memorandum is subject to a qualified privilege because it was published by persons having a common interest in the subject matter to persons sharing that interest. *Restatement (Second) of Torts* section 596 (1977) provides that "[a]n occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."

Although we have not specifically incorporated section 596 of the *Restatement (Second) of Torts* into Colorado case law, we have extended a qualified privilege to communications by a party with a legitimate interest to persons having a corresponding interest and communications promoting legitimate individual, group, or public interests. *Coopersmith v. Williams*, 171 Colo. 511, 468 P.2d 739 (1970); *Denver Public Warehouse Co. v. Holloway*, 34 Colo. 432, 83 P. 131 (1905); *cf. Ling v. Whittemore*, 140 Colo. 247, 343 P.2d 1048 (1959) (following section 595, *Restatement (Second) of Torts*, protecting publications

affecting a sufficiently important interest of recipient or third person). A number of other courts have extended a qualified privilege to publications concerning employees made to third persons with common interests. *See, e.g., Lull v. Wick Construction Co.*, 614 P.2d 321 (Alaska 1980) (qualified privilege granted to communications from contractor concerning subcontractor made to bank and bonding company); *Vlasaty v. Pacific Club*, 4 Hawaii App. 556, 670 P.2d 827 (1983) (qualified privilege extended to communications by employer concerning manager made to supervisory employees, other employees, and club members); *Buckley v. Litman*, 57 N.Y.2d 516, 457 N.Y.S.2d 221, 443 N.E.2d 469 (1982) (qualified privilege extended to communications by employer concerning employee to potential future employer).

■ A qualified privilege to make a communication and its attendant presumption that the communication is made in good faith without malice require that the plaintiff prove that the defendant made the communication with malice or in reckless disregard of the veracity of the communication. *See Abrahamsen*, 177 Colo. 422, 494 P.2d 1287 (1972) (qualified privilege lost when publication made with express malice); *Coopersmith*, 171 Colo. at 516, 468 P.2d at 741 (plaintiff has the burden of proving existence of malice); *Ling*, 343 P.2d at 1050 (publication must be actuated by express malice). In balancing the interest of the defamed person in the protection of his reputation against the interest of the publisher, third persons, and the public in allowing the publication, we believe that the publication in this case is subject to a qualified privilege because the interest in employee and peer comment to supervisors concerning rehiring are of sufficient importance to require fault greater than negli-

gence. *See Restatement (Second) of Torts* (1977), § 596, comment b.

■ *Restatement (Second) of Torts* section 600 (1977) states that a privilege to publish false and defamatory matter is lost if the publisher "(a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity." The *Restatement (Second) of Torts* (1977) defines reckless disregard as "a high degree of awareness for probable falsity or serious doubt as to the truth of the statement." § 600 comment b. We have defined "malice" and "reckless disregard" previously only in media cases; therefore, we now determine that one who publishes defamatory or false material loses the qualified privilege for that publication if he publishes the material with malice, that is, knowing the matter to be false, or acts in reckless disregard as to its veracity as defined by the *Restatement (Second) of Torts.*[1]

### B.

■ In this case Dominguez has failed to show that there is a genuine issue of material fact as to the defendants' malice or reckless disregard and that summary judgment was therefore improper. In responding to the defendants' affidavits alleging good faith publication based on personal knowledge, a plaintiff must submit counter-affidavits and allege specific facts, which if true, would raise a genuine issue of material fact. *Norton v. Dartmouth Skis Corp.*, 147 Colo. 436, 364 P.2d 866 (1961). Although the question of malice is ordinarily one for the jury, *see Abrahamsen*, 177 Colo. 422, 494 P.2d 1287, a judge may withdraw the issue from the jury if there is no genuine issue concerning

---

1. In the media context, we have defined a defamatory statement made with "actual malice" as a communication "known to be false or ... made with reckless disregard of whether it was true or false." *DiLeo v. Koltnow*, 200 Colo. 119, 122, 613 P.2d 318, 321 (Colo.1980). A person acts with reckless disregard of the veracity of a statement when he "in fact entertain[s] serious doubts as to the truth of his publication."

*Burns v. McGraw-Hill Broadcasting Co.*, 659 P.2d 1351, 1361 (Colo.1983); *see also St. Amant v. Thompson*, 390 U.S. 727 (1968). Although the definitions in the media and nonmedia contexts are similar, the focus in the media cases is on a robust press. Because this case does not involve the media, we follow the *Restatement (Second) of Torts* (1977) definition of "malice."

malice or reckless disregard. *Ling,* 140 Colo. at 251, 343 P.2d at 1050; *Denver Public Warehouse Co.,* 34 Colo. at 437, 83 P. at 132; *Fort Collins Motor Homes, Inc. v. City of Fort Collins,* 30 Colo.App. 445, 496 P.2d 1074 (1972). Thus, the question of malice may be appropriate for resolution by summary judgment. *DiLeo v. Koltnow,* 200 Colo. 119, 125–26, 613 P.2d 318, 323; *see also Lull,* 614 P.2d 321; *Vlasaty,* 4 Hawaii App. 556, 670 P.2d 827; *Buckley,* 57 N.Y.2d 516, 457 N.Y.S.2d 221, 443 N.E.2d 469.

 Dominguez, citing *Hatfield v. Barnes,* 115 Colo. 30, 168 P.2d 552 (1946), asserts that the defendants' affidavits stating that the September 4 memorandum was the product of either personal knowledge or reliance on other faculty members' statements that were believed to be true and that each defendant signed the memorandum in good faith and had no doubt as to the truth of the documents were insufficient to take the issue from the jury. In this case, neither the affidavits nor the depositions of the defendants provide any indication of malice. Dominguez asserts that actual malice may be inferred if a defendant's investigation of the facts is grossly inadequate. *Kuhn v. Tribune-Republican Publishing Co.,* 637 P.2d 315 (Colo.1981). Here, the eighteen defendants were faculty members in Dominguez's department and had ample opportunity to observe Dominguez's work. Where nothing in the record indicates malice, the qualified privilege requires a presumption of good faith and summary judgment is proper. *Coopersmith,* 171 Colo. 511, 468 P.2d 739. Thus, even if the issue of consent were to be decided in Dominguez's favor, the district court's granting of summary judgment was proper because Dominguez failed to show actual malice.

Judgment affirmed.

KIRSHBAUM and VOLLACK, JJ., do not participate.