Bernard **STEINBERG**, Plaintiff,

v.

James **THOMAS**, individually and in his capacity as State Court Administrator, and the Colorado Judicial Department, Defendants.

Civ. A. No. 84–M–1759.

United States District Court, D. Colorado.

May 5, 1987.

John R. Holland, Denver, Colo., for plaintiff.

Carol Welch, Hall & Evans, Neil Tilquist, Asst. Atty. Gen., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The plaintiff, Bernard Steinberg, was employed as staff legal officer in the office of the State Court Administrator, Colorado Judicial Department, from July 1971 until October 29, 1982. The defendant, James Thomas, is and was the State Court Administrator during the time relevant to this dispute. Steinberg's duties involved providing legal advice and counsel, and representation when necessary, to the State Court Administrator, all justices and judges, and all court personnel on matters relating to the administration of the state court system.

In this civil action, the plaintiff claims damages from the defendant James Thomas, individually, pursuant to 42 U.S.C. § 1983, upon alleged violations of rights protected by the United States Constitution and for defamation under state law. The core of the dispute is an involuntary termination of employment after a confrontation at a staff meeting on September 3, 1982. The Colorado Judicial Department is a defendant only on the plaintiff's equitable claim for reinstatement. The plaintiff filed a motion for summary judgment of liability, reserving damages. The defendants filed a motion for summary judgment dis-

missing all claims. The issues have been briefed and oral argument was heard on April 10, 1987. Most of the material facts are not in dispute. To the extent of any disagreement, this court has accepted the plaintiff's version in determining these issues under Fed.R.Civ.P. 56.

In response to many complaints of unfairness and by direction of the Colorado Supreme Court, the Personnel Services Division of the State Court Administrator's office developed a new classification plan for all non-judicial personnel. That proposal was circulated to the entire judicial system in July, 1982, with a cover memorandum from Thomas, inviting comments, suggestions and any other response for consideration before making the plan final.

Some of the responses received were very negative. Thomas ridiculed and derided the critical comments and suggestions with which he disagreed. Two hundred Judicial Department clerks signed a request for a job title change from clerk to judicial administrator or judicial assistant. Steinberg's perception of Thomas' conduct was summarized in the following paragraphs from Steinberg's affidavit submitted to this court:

> I considered my statements to be an integral part of my duties as staff legal officer of the Colorado Judicial Department, as I felt that James Thomas' conduct was a clear abuse of the power and trust imposed in the position of administrator of the Colorado judicial system.
>
> I criticized James Thomas for his publicly abusive, derisive, ridiculing, obscene, and scatological responses to input with which he disagreed, which input he specifically and expressly requested, and which input came from various parts of the state, on a plan that would affect all court personnel in the state.

During the process, Steinberg requested reclassification of his own position. Mel Fooks, director of Personnel Services, informally told Steinberg in August, 1982 that the request would probably be denied. Steinberg's request was officially denied October 18, 1982.

On September 3, 1982, the State Court Administrator's staff met for its bi-weekly meeting. Approximately ten people were present, including Steinberg and Thomas. The meeting was not open to the public. During the meeting, Steinberg was asked to report on one of his projects. He remarked that unlike the proposed reclassification plan, his project was genuinely open for input. Thomas immediately demanded to know what Steinberg meant by that statement. Steinberg attempted to avoid a confrontation, but Thomas insisted. Steinberg said the classification plan was not an open process. He criticized Thomas for making derogatory comments about some of the suggestions received and ridiculing people whose suggestions were critical.

Later that same day, Thomas asked for Steinberg's resignation. Steinberg asked Thomas to reconsider, and Thomas agreed to think about it over the Labor Day weekend. Thomas did not change his mind. Forced to resign or be fired, Steinberg resigned on September 22, 1982. He left the Judicial Department on October 29, 1982. Claiming that he was terminated solely for his speech at the September 3, 1982 meeting, in violation of his right to free speech protected by the First and Fourteenth Amendments, Steinberg filed this action under 42 U.S.C. § 1983 on August 31, 1984. Steinberg also asserts four common law claims for defamation, wrongful discharge, breach of implied and contractual duty of good faith, and outrageous conduct under the doctrine of pendent jurisdiction.

Under *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), Steinberg's speech is protected only if it related to a matter of public concern. In *Connick*, an assistant district attorney, unhappy over her transfer to another section of the criminal court, prepared and distributed to the other assistants a questionnaire concerning office transfer policy, office morale, whether employees felt pressured to work in political campaigns, and other matters. She was then fired for refusing to accept the transfer and for insubordination. The Supreme Court held the discharge did not offend the First Amendment because the questionnaire involved matters of public

792

concern only in the limited sense of the question regarding whether employees felt pressured to work on political campaigns. Primarily, the dispute was characterized as an employee grievance concerning internal office matters. The limited First Amendment interest was outweighed by the governmental interest in the efficient and successful operation of the prosecutor's office.

■ Assuming that Steinberg's criticism was motivated by his concern for the effectiveness of the State Court Administrator in the performance of his responsibilities and for the operation of the Judicial Department in the public interest, and also assuming that Steinberg was fired solely in retaliation for his remarks at the September 3, 1982 meeting, this court concludes that the plaintiff has not established that his speech related to a matter of public concern, and, therefore, the court need not apply the balancing test required by *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See, Wilson v. City of Littleton, Colo.*, 732 F.2d 765 (10th Cir.1984).

The speech at issue related to an internal departmental dispute, not a matter of community-wide political or social concern. Steinberg's complaint is with the *manner* of Thomas' reaction to the responses, not the substantive policies of the proposed plan or the ability of the agency to serve the public. Assuming the validity of the perception that Thomas' memorandum was a sham and that the personnel classification system was not really open for comment, the denial of a democratic process for departmental planning is not a matter of public interest. Granting First Amendment protection to public employees in this type of internal dispute would impair the ability of government to function. The incidental effect on the public which may result from internal agency conflict does not transform such a squabble into a matter of public concern.

The context of the speech was not public. Steinberg spoke during a private staff meeting. Thomas' offensive remarks all were made within the office of the State Court Administrator.

When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable....

[W]hen a public employee speaks not as a citizen upon mattters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State....

To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case.

*Connick v. Myers*, 461 U.S. at 146–147, 149, 103 S.Ct. at 1690, 1691 (citation omitted).

The cases Steinberg cites for support of his position are factually distinguishable. *Johnson v. Lincoln University*, 776 F.2d 443 (3rd Cir.1985), concerned academic freedom and the quality of black colleges in America. *Lewis v. Harrison School Dist. No. 1*, 805 F.2d 310 (8th Cir.1986), involved comments at a public meeting concerning public education and teacher organizing activities.

In *Wulf v. City of Wichita*, 644 F.Supp. 1211 (D.Kan.1986), the court held that a police officer's allegations to the state attorney general of interference with the right of membership in a police union and improper use of public funds, with a request for an official investigation of the Wichita police department, was a matter of public concern protected by the First Amendment.

In *Cox v. Dardanelle Public School District*, 790 F.2d 668 (8th Cir.1986), the dispute related to a school district's decision to end "ability grouping" of students. The court found the speech was protected: "The educational theories and practices employed by school administrators is clearly a question of public concern. The questions how we teach the young, what we teach them, and the environment in which we teach them are of the most central concern to every community in the nation." *Cox v. Dardanelle Public School District*, 790 F.2d at 673. In contrast to protected speech concerning educational policies, the court did not afford protection to speech relating to "the policies requiring teachers to sign in and out and forbidding personal use of the office phones, and ... the timing of announcements and messages during the day...." In this court's view, this latter unprotected speech relating to internal affairs is analogous to the speech for which Steinberg seeks protection.

■ Even if Steinberg's speech were a matter of public concern, the protection it would deserve is outweighed by the state's interest as an employer. Where speech is of public concern, the court must balance "the interests of the [employee], as a citizen, in commenting upon matters or public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. at 568, 88 S.Ct. at 1734 (1968). The Court in *Connick* applied this balancing test in deciding that even though Myers' questionnaire was in part a matter of public concern, the governmental interest in an efficient administration of the prosecutor's office was given greater

weight. Steinberg's remarks to Thomas were made during a staff meeting in front of approximately ten employees of the Colorado Judicial Department. As such, they challenged Thomas' authority as Steinberg's superior. The speech was sarcastic and poorly timed. Given the nature and context of Steinberg's speech, this court concludes that the Colorado Judicial Department's interest in the effective and efficient discharge of its public duties outweighs Steinberg's interest in freedom of speech.

■ In addition, even if Steinberg's speech were on a matter of public concern and entitled to full First Amendment protection, Thomas would be shielded from liability under the doctrine of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), held that government officials are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738.

The Court in *Harlow* declined to decide what constitutes "clearly established" law. Thus, "lower courts have had to determine the degree of 'factual correspondence between the cases establishing law and the case at hand.'" *Garcia v. Miera*, 817 F.2d 650, 656–657 (10th Cir. 1987), quoting comment, Harlow v. Fitzgerald: *The Lower Courts Implement the New Standards for Qualified Immunity under Section 1983*, 132 U.Pa.L.Rev. 901, 923 (1984). The Tenth Circuit in *Garcia* held that while some factual correspondence is required, precise correspondence is not. The court held that government officials must know and apply general, well-developed legal principles. *Garcia v. Miera*, at 657.

The law on whether Steinberg's speech was a matter of public concern was not clearly established in September of 1982 when Thomas fired Steinberg. *Connick*, the leading case on the public concern issue, was not decided until April, 1983. It held that the question of whether speech is of public concern must be decided based on

the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. at 147–148, 103 S.Ct. at 1690. Thus, even after *Connick* the contours of the public concern question remain unsettled. This court finds that because Thomas did not violate "clearly established ... rights of which a reasonable person would have known", *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738, he would be shielded from civil liability under the doctrine of qualified immunity.

## Pendent Claims

### A. Defamation

Approximately a year after he left the Colorado Judicial Department, Steinberg applied for employment in the General Legal Services Section of the Colorado Attorney General's office. In that position Steinberg would have been required to represent and work with the Colorado State Judicial Department, among other state agencies. Deputy Attorney General Charles Howe called the defendant Thomas on October 31, 1983 to inquire about Steinberg's performance. Thomas allegedly defamed Steinberg by saying: Steinberg had not performed satisfactorily; had difficulty communicating with judges and staff; was not a team player; could not be trusted to work well in his department; consistently had judges in an uproar; caused chaos in the department; and was hard to get along with. Thomas denies these allegations but they are accepted as true in considering the defendant's motion. Thomas also criticized Steinberg's legal work and accused Steinberg of "attacking" him at the September 3, 1982 meeting. Steinberg was not offered a position in the Attorney General's office. Steinberg says Thomas' statements were false, were made with a reckless disregard for the truth, and were intentionally designed to damage his reputation.

The defendants argue that Thomas had an absolute or qualified privilege to discharge Steinberg and to discuss the circumstances of his discharge with Charles Howe. Steinberg argues against absolute privilege and contends that the qualified privilege is inapplicable because Thomas

acted with malice or reckless disregard for the truth. The claim for defamation must be decided under Colorado common law.

Colorado courts grant qualified immunity to "communications by a party with a legitimate interest to persons having a corresponding interest and communications promoting legitimate individual, group, or public interests." *Dominguez v. Babcock*, 727 P.2d 362, 365 (Colo.1986). *See also, Coopersmith v. Williams*, 171 Colo. 511, 468 P.2d 739 (1970) (Qualified privilege extends to any subject in which the communicating parties have a legitimate interest), *Buckley v. Litman*, 57 N.Y.2d 516, 457 N.Y.S.2d 221, 443 N.E.2d 469 (N.Y.1982) (Qualified privilege extends to communications concerning employee made by employer to potential future employer), Restatement (Second) of Torts § 596 (Qualified privilege applies if persons having a common interest in a particular subject correctly or reasonably believe that there is information that another sharing the common interest is entitled to know).

The question of whether a communication is privileged is for the court, *Dominguez v. Babcock*, 727 P.2d at 365, and this communication was. In the context of this conversation, both men had a legitimate reason to discuss Steinberg. The fact that Howe initiated the discussion further supports this conclusion. However, the privilege is lost if the plaintiff can overcome the presumption that the communication was made in good faith:

> [W]e now determine that one who publishes defamatory or false material loses the qualified privilege ... if he publishes the material with malice, that is, knowing the matter to be false, or acts in reckless disregard as to its veracity as defined by the *Restatement (Second) of Torts.*

*Dominguez v. Babcock*, 727 P.2d at 366 (footnote omitted). Restatement (Second) of Torts § 600 comment (b) defines reckless disregard as "a high degree of awareness for probable falsity or serious doubt as to the truth of the statement."

■ Steinberg has made a sufficient showing of possible malice or reckless disregard to preclude the entry of summary

judgment. On September 11, 1981, Thomas wrote to Justice Erickson that Steinberg was "extremely capable", "has an excellent knowledge of the law", "has effectively represented the Judicial Department whenever necessary", "has demonstrated a fairness and an impartiality", and "is of the highest moral character and ... would serve the people of Colorado well as a district court judge." In a July 1, 1981 memo to file Thomas wrote:

> Mr. Steinberg continues to perform his duties as Staff Legal Officer in a very thorough and conscientious manner. He displays an excellent knowledge of the court system and assists judges and employees on a daily basis by answering questions and resolving problems. His work as staff to the various committees of the Supreme Court continues to receive many compliments.

There is a possible inference that Thomas took Steinberg's criticism personally, with anger, and that the statements to Howe were made to prevent Steinberg from getting a job for which he was qualified. It is possible to infer malice.

### B. Wrongful Discharge

Steinberg's wrongful discharge claim rests entirely on the argument he was discharged for exercising his First Amendment rights. Having concluded that Steinberg's speech was not entitled to First Amendment protection, the court has eliminated the basis for this claim.

### C. Breach of Implied Provision of Good Faith

■ The complaint asserts that "there existed a clear and implied provision in Plaintiff's office entitlement that he would not be discharged in bad faith.... It was ... Plaintiff's reasonable expectation that he would not be terminated except on a just, adequate or good cause basis." This claim is unsubstantiated. There is no evidence to support an implied contract or to create an objective expectation of continued employment. *See, Hamm v. Scott,* 426 F.Supp. 950 (D.Colo.1977). The claim also fails insofar as it asserts that the act of bad faith was discharging Steinberg for protected speech, since the speech was not protected.

### D. Outrageous Conduct

In *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970), the Colorado Supreme Court recognized a cause of action for intentional infliction of emotional distress, limited, however, by Restatement (Second) of Torts § 46. Comment (d) to § 46 contains the often quoted language that the conduct must be "extreme and outrageous", "beyond all possible bounds of decency" and "utterly intolerable in a civilized community".

In *Rawson v. Sears Roebuck & Co.,* 530 F.Supp. 776 (D.Colo.1982), Judge Kane analyzed the Colorado case law and concluded that there must be a "pattern of conduct by the defendant that either intentionally or recklessly caused severe emotional distress to the plaintiff ... [or involved] public or quasi-public officials severely abusing their duties and responsibilities." *Rawson v. Sears Roebuck,* 530 F.Supp. at 780.

> In many, if not most, civil lawsuits the plaintiff believes that the defendant's conduct has been outrageous. Most lawsuits also cause the plaintiff (and often the defendant) emotional stress. Yet very few fact situations give rise to a cognizable claim for intentional infliction of emotional distress. The spate of compliants precipitated by the *Rugg v. McCarty* case which include claims for outrageous conduct tend to make the critical reader think that there is a lot less there than meets the eye.

*Rawson v. Sears Roebuck,* 530 F.Supp. at 780.

■ The plaintiff's claim is based upon two incidents: His discharge, and Thomas' allegedly defamatory remarks to Howe. These incidents do not reach the threshold level of conduct necessary to support a claim of outrageous conduct. The fact situations in the cases cited by Steinberg are considerably more egregious than this one. *See, e.g., DeCicco v. Trinidad Area Health Association,* 40 Colo.App. 63, 573 P.2d 559 (1977) (Jury question presented where plaintiff alleged that defendants refused

ambulance service to his critically ill wife, causing her death).

Steinberg has not shown that Thomas intended to harm him emotionally, either by discharging him or by responding to the call from the Attorney General's office. He has not shown recklessness. There was no pattern of conduct. Thomas' actions were not the kind of severe abuse of public position capable of supporting an outrageous conduct claim. While it appears that Steinberg did suffer emotional distress, this fact alone cannot support a claim for outrageous conduct.

The only claim to be tried in this civil action is the claim for defamation. Because this case has been pending in this court for more than two years, a statute of limitations question may be presented if the claim must now be filed in state court, and because the plaintiff's case involves the actions of a high official in the Colorado Judicial Department, this court will exercise pendent jurisdiction to adjudicate this state law claim.

Upon the foregoing, it is

ORDERED, the plaintiff's motion for partial summary judgment is denied, and it is

FURTHER ORDERED, the defendant's motion for summary judgment is granted as to the plaintiff's first, third, fourth and fifth claims for relief, and it is

FURTHER ORDERED, this court will retain jurisdiction over the plaintiff's second claim for relief for defamation under the doctrine of pendent jurisdiction.