ROSE DELLORUSSO *vs.* MANUEL P. MONTEIRO & another.[1]

No. 96-P-1160.

Suffolk. January 15, 1999. - July 30, 1999.

Present: KASS, GILLERMAN, & LAURENCE, JJ.

*Libel and Slander. Privileged Communication. Malice.*

Where an applicant for employment with the Boston School Department requested the State Department of Personnel Administration to determine the reasons why the school department had not hired her, the applicant had consented to the publication of material that might be defamatory and was foreclosed from maintaining a libel action in circumstances in which the school department personnel in good faith thought that their statements about the applicant were true. [477-480]

CIVIL ACTION commenced in the Superior Court Department on March 30, 1994.

The case was heard by *Gordon L. Doerfer*, J., on a motion for summary judgment.

*Edward F. Lawson* for the plaintiff.

*Haidie Morris* for the defendants.

KASS, J. When Rose DelloRusso failed to obtain a job as a clerk-typist with the Boston school department (school department), she demanded to know why and requested the State Department of Personnel Administration (DPA) to obtain the answer to her question. The response to the DPA made on behalf of the school department by the defendants Manuel P. Monteiro and Swee Lin Wong-Wagner was not flattering to DelloRusso. She filed a defamation action against Monteiro and Wong-Wagner. A judge of the Superior Court allowed a defense motion for summary judgment on the ground that DelloRusso, by pressing the DPA to learn the school department's reasons for not hiring her, had consented to publication of material that

---

[1]Swee Lin Wong-Wagner.

might be defamatory and was foreclosed from maintaining a libel action, so long as the defendants in good faith thought the statements about DelloRusso were true. We affirm.

These are the undisputed facts, drawn from the summary judgment materials, which included pleadings, depositions, and documents received as exhibits during the course of depositions. DelloRusso had worked for the school department as an attendance monitor from 1983 to 1989. The only years in which her job performance had been formally evaluated by the school department were 1988 and 1989, and those evaluations were satisfactory. In 1986, however, the school department had charged DelloRusso with an attendance problem of her own — failure to show up for a meeting with a supervisor. DelloRusso filed a grievance as to that accusation. The matter was settled, a term of the settlement being that the disciplinary complaint would not be included in her personnel file or used in any other proceeding.[2]

In 1989, DelloRusso resigned her school department position to take a job as a clerk-typist for the city of Boston. About a year later, DelloRusso learned that the school department was hiring one hundred clerk-typists. (She had earlier passed a civil service examination for that job category.) She also took and passed a typing test. Next, DelloRusso reported to the school department and signed an "Authorization of Employment" form which had the effect of declaring herself as an eligible applicant for one of the one hundred slots.

By reason of a budget freeze, the school department decided to fill only twenty-three clerk-typist positions. Monteiro and Wong-Wagner were, respectively, senior manager of the office of personnel at the school department and specialist, non-academic personnel. Through the administration of "white out" correction fluid, DelloRusso's name was caused to vanish from the Authorization of Employment form before the submission of that document to the DPA. Apparently when DelloRusso had been asked to sign the Authorization of Employment form, she

---

[2]This information about the settlement agreement appears in a footnote to the motion judge's memorandum of decision. The agreement does not appear in the record appendix. No question was put to either defendant whether she or he, respectively, knew of the provision of the settlement agreement that the particular disciplinary proceeding which was the subject of the settlement agreement was not to be used in any other proceeding. The deposition of Wong-Wagner refers to other disciplinary complaints against DelloRusso about failures to report for work.

was thought by the personnel office at the school department to be a school department employee. The deletion of DelloRusso's name from the eligible list occurred when someone at the personnel office realized that DelloRusso was no longer a school department employee. That fact was of consequence because the school department had agreed with the employees' union that provisional employees — those working in the school department without appointment — would have first dibs on the permanent positions, and there were more than twenty-three provisional employees available.

When DelloRusso asked the school department why she had not been hired, Wong-Wagner told her that a hiring freeze was on and no new positions would be filled. Converting provisionals to permanent status did not violate the freeze because new hires were not coming on board; it was just a status change. DelloRusso asked the DPA to look into why she had not been offered one of the jobs. To the DPA's inquiry, Monteiro responded by letter that individuals not chosen "either failed the Civil Service Typing Test or did not show up for the exam." That was not a satisfactory answer as DelloRusso had in fact passed the typing test. The DPA asked for further explanation. It came in the form of a letter from Monteiro, dated April 2, 1991, stating that DelloRusso had not been hired because of a "past history of work habits which are inconsistent with School Department standards, including failure to report to work and failure to report to scheduled meetings with School Department officials." In April, 1991, the school department advertised additional clerk-typist positions and the process with DelloRusso pretty much followed the same course, culminating in a written response, this time from Wong-Wagner, that repeated the bad work habits complaint made by Monteiro. It is that charge, made once by each of the defendants, that is the basis for the defamation complaint.

1. *Is the statement defamatory?* Although the defendants debate the point, the school department statement about "work habits which are inconsistent with School Department standards," if false and not otherwise privileged, is defamatory because it holds DelloRusso up to scorn and discredit in her community of government agencies that employ clerk-typists. See *Stone* v. *Essex County Newspapers, Inc.*, 365 Mass. 246, 250 (1974); *Smith* v. *Suburban Restaurants, Inc.*, 374 Mass. 528, 529 (1978); *Disend* v. *Meadowbrook Sch.*, 33 Mass. App.

Ct. 674, 675 (1992). Statements about a person's vocational reputation, such as the one made about DelloRusso, are particularly likely to be defamatory. *Id.* at 676. Cf. *Sharratt* v. *Housing Innovations, Inc.*, 365 Mass. 141, 143-145 (1974).

2. *Consent to publication.* As a general proposition, consent to publication of material concerning her or him that a plaintiff regards as defamatory bars a libel or slander action. Restatement (Second) of Torts § 583 (1977). The idea is that if a person elicits a statement, that person cannot build a legal action on what she has caused to be said or written. *Burns* v. *Barry*, 353 Mass. 115, 118 (1967). In that case the plaintiff was an engineer who had been denied registration by the Board of Registration of Professional Engineers and Land Surveyors. The plaintiff arranged to have a friend, posing as a prospective employer, inquire of the board why the plaintiff was not registered and the defendant, a member of the board, divulged information unfavorable to the plaintiff. "If there was a wrong here," the court wrote, "it was one invited and procured by the plaintiff himself and it would constitute great inequity to allow him to recover on the basis of it." *Ibid.* See *Joftes* v. *Kaufman*, 324 F. Supp. 660, 662-663 (D.D.C. 1971); *Mandelblatt* v. *Perelman*, 683 F. Supp. 379, 383 (S.D.N.Y. 1988); *Glaze* v. *Marcus*, 151 Ariz. 538, 540 (1986); *Royer* v. *Steinberg*, 90 Cal. App. 3d 490, 498-499 (1979); *Costa* v. *Smith*, 43 Colo. App. 251, 252 (1979); *McDermott* v. *Hughley*, 317 Md. 12, 27 (1987); *Lee* v. *Paulsen*, 273 Or. 103, 105 (1975).

A common characteristic of the cases above cited is a request by the plaintiff in each for the reasons behind a failure to hire or behind a disciplinary action. Particularly the *Costa, Royer,* and *Lee* cases reflect illustration 2 to comment d of Retatement (Second) of Torts § 583: "A, a school teacher, is summarily discharged by the school board. He demands that the reason for his dismissal be made public. B, president of the board, publishes the reason. A has consented to the publication though it turns out to be defamatory." DelloRusso protests that it was not she but someone else, namely the DPA, who asked why she was not hired and that, therefore, she may surmount the barrier of the consent principle. That is not persuasive. It was Dello-Russo who started the chain of inquiry by requesting the DPA to find out why she had not been hired.

Many of the cases treat the privilege conferred by a consent to publication of defamatory material as absolute. The better

view is that the limit of the privilege is a good faith belief by the person who published the defamatory material that it was true. See *Joftes* v. *Kaufman*, 324 F. Supp. at 662-663; Restatement (Second) of Torts § 583 comment d ("one who agrees to submit his conduct to investigation knowing that its results will be published, consents to the publication of the honest findings of the investigators"); Harper, James, & Gray, Torts § 5.17, at 137-139 (2d ed. 1986) (there is a qualified privilege to err honestly). Cf. *Remington* v. *Congdon*, 2 Pick. 310, 314-315 (1824); *Mulgrew* v. *Taunton*, 410 Mass. 631, 634-635 (1991) ("An absolute privilege provides a defendant with a complete defense to a defamation suit even if the defamatory statement is uttered maliciously or in bad faith. A qualified or conditional privilege, on the other hand, immunizes a defendant from liability unless he or she acted with actual malice" [citations omitted]); *Dexter's Hearthside Restaurant, Inc.* v. *Whitehall Co.*, 24 Mass. App. Ct. 217, 222-223 (1987).[3]

DelloRusso argues that the school department abused the privilege conferred by the consent principle because the reasons it gave for not hiring her were a cover for the real reason, that it was giving the available jobs to provisional employees. Although that was the frontline reason, the school department was entitled to have a back-up reason, and so long as Monteiro and Wong-Wagner honestly believed that reason to be valid, the privilege was not abused. An honest belief presupposes a modicum of effort to verify the facts, if "verification is practical and the matter is sufficiently weighty to call for safeguards against error." *Mendez* v. *M.S. Walker, Inc.*, 26 Mass. App. Ct. 431, 433-434 (1988). We think the Superior Court judge correctly decided that, on the summary judgment materials, there was reason for Monteiro and Wong-Wagner to know about several disciplinary complaints against DelloRusso, including the 1986 complaint, and that they had no reason to think the facts underlying those complaints were false. That writing to the DPA about the 1986 disciplinary complaint violated the agreement under which the school department was not to raise that incident in other proceedings may have been a source of

---

[3]Examples of occasions of absolute privilege are testimony of a witness in a judicial proceeding, *Aborn* v. *Lipson*, 357 Mass. 71, 73 (1970); statements made in course of criminal investigation, *Correllas* v. *Viveiros*, 410 Mass. 314, 323-324 (1991); and statements of attorneys in the conduct of litigation, *Doe* v. *Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 140-141 (1996).

complaint for DelloRusso before some other forum, but it does not cause the defendants' statements to be defamatory.[4]

*Judgment affirmed.*

---

[4]Nor does that violation demonstrate any malice on the part of either Wong-Wagner or Monteiro, because the record does not show either was aware of the restrictive provision in the settlement agreement. See note 2, *supra.*