**William M. MEEHAN, Plaintiff,**

v.

**AMAX OIL & GAS, INC., a Delaware Corporation, Ladd Petroleum Corporation, a Delaware Corporation, and Lloyd L. Parks, as President and Chief Executive Officer of Amax and Ladd, and Individually, Defendants.**

**Civ. A. No. 91–B–773.**

United States District Court, D. Colorado.

Aug. 10, 1992.

Milo N. Gonser, Mara A. Pawlowski, Gonser, Pawlowski & Associates, P.C., Lakewood, Colo., for plaintiff.

Walter V. Siebert, Elizabeth I. Kiovsky, Sherman & Howard, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants move for summary judgment contending that there are no genuine disputes of material fact and they are entitled to judgment as a matter of law. The issues are adequately briefed and oral argument will not materially aid in their resolution. For the reasons set out below, the

motion is granted in part and denied in part.

This diversity action arises out of an employment agreement between plaintiff and General Electric Holdings, Inc. (GE). Plaintiff was employed by GE for more than 20 years until approximately 1984 when he became controller of Ladd Petroleum Corporation (Ladd), a wholly owned subsidiary of GE. In 1990, GE announced that it was considering the sale of Ladd and offered plaintiff the opportunity to sign an employment agreement, which he signed on September 14, 1990.

The agreement was for a term of 24 months, beginning on the date of sale of Ladd to any entity. The agreement provided that the purchaser of Ladd would provide plaintiff with a "comparable position" to the position then held by plaintiff with Ladd. If plaintiff refused the offer, he would be entitled only to his severance benefits. The agreement also provided that plaintiff could be terminated without cause, in which case he would be entitled to his full salary and benefits for the entire 24 months. Ladd was eventually purchased by Amax Oil & Gas, Inc. (Amax) on December 21, 1990, and Amax expressly agreed to honor plaintiff's employment agreement.

Amax planned to consolidate Ladd into its Houston headquarters and close the Denver office by May 31, 1991. On January 28, 1991, Amax offered plaintiff the position of assistant controller in its Houston office and told him that his employment would otherwise end when the Denver office closed. Because he felt that the offer was not comparable to his present position, plaintiff declined. Four days later, on February 26, 1991, defendants terminated plaintiff's employment and paid him his severance benefits.

Plaintiff now brings five claims for relief. First, he alleges that defendants breached the employment agreement and that their breach was willful and wanton so as to entitle him to non-economic damages. Second, plaintiff claims that Amax's president, Lloyd Parks, tortiously interfered with his employment contract. Third, plaintiff contends that Parks made defam-atory statements to officials of GE, Ladd, and Amax in connection with his termination. Fourth, plaintiff alleges that Parks tortiously interfered with his prospective employment opportunities. Finally, plaintiff claims that his termination violated public policy. Defendant moves for summary judgment on all of these claims except the breach of contract claim.

**I.**

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate when the court can conclude that no reasonable juror could find for the non-moving party on the basis of the evidence present in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and all doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991). However, the non-moving party cannot rest on conclusory allegations contained in its pleadings or affidavits. *McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir.1987). The non-moving party must go beyond the pleadings and designate specific facts showing that there are genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan*, 931 F.2d 636, 639 (10th Cir.1991).

**II.**

Defendants move for summary judgment on plaintiff's first claim for breach of con-

tract only to the extent that the claim seeks non-economic damages for a willful and wanton breach. Plaintiff's employment agreement expressly provided that "This agreement shall be governed in all respects by and in accordance with the laws of the State of New York." Defendant asserts, and plaintiff concedes, that the laws of New York do not permit the recovery of non-economic damages on a breach of contract claim. *See, e.g., Zahler v. Niagra County Chapter,* 112 A.D.2d 707, 491 N.Y.S.2d 880, 881 (N.Y.App.Div.1985).

 In a diversity action, district courts use the choice of law rules of the forum state. *Klaxon v. Stentor Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Colorado has expressly adopted the *Restatement (Second) of Conflict of Laws* (1971) for contract actions. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau,* 198 Colo. 444, 601 P.2d 1369 (1979). The *Restatement* § 207 provides that the measure of recovery for a breach of contract is determined by the local law of the state selected by application of §§ 187–188. In turn, section 187(1) provides that "The law of the state chosen by the parties ... will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."

 Here, the parties chose to apply the law of New York to control disputes over the employment agreement. Clearly, they could have addressed the issue of non-economic damages in that agreement. Therefore, the parties choice of law is effective under § 187(1) and the law of New York will govern plaintiff's breach of contract claim. Because New York does not allow recovery of non-economic damages for a willful and wanton breach of contract, defendants' motion is granted as to that claim.

Plaintiff's claim that defendants' waived their contractual right to assert the choice of law provision is factually groundless and without merit.

III.

Plaintiff's remaining claims all sound in tort. Using Colorado's choice of law rules, the parties do not dispute that these claims are governed by Colorado law.

Defendant asserts that plaintiff's second claim for intentional interference with contractual relations fails because plaintiff has no evidence that Parks was a "third party" or acted improperly. I disagree.

 A defendant who intentionally and improperly interferes with the performance of a contract between the plaintiff and a third party is subject to liability. *Trimble v. City and County of Denver,* 697 P.2d 716, 726 (Colo.1985). Here, Parks argues that there is no "third party" because he is an officer of Amax, the party with which plaintiff contracted. However, in *Trimble,* the Colorado Supreme Court held that a corporate officer is a third party to a contract between the corporation and an employee of that corporation. *Id.* See also, *Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.App.1985).

 Parks also argues that plaintiff has no evidence that he acted improperly. An officer of a corporation generally will not be held personally liable for inducing the corporation's breach of its contract with another if the officer is acting within the scope of his official duties. *Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619, 623 (Colo.App.1988); *Zappa,* 706 P.2d at 442. "However, if the officer or director is motivated solely be a desire to induce the corporation to breach its contract with the plaintiff or to interfere with the contractual relations between the corporation and the plaintiff, the interference is improper." *Zappa,* 706 P.2d at 442; *Trimble,* 697 P.2d at 726. In applying this test, Colorado courts have looked to whether the defendant acted in good faith to serve the corporation's interests and whether the defendant acted with malice towards the plaintiff or was motivated by a desire to harass or retaliate against the plaintiff.

Defendant argues that his conduct cannot be improper because he was acting

within the scope of his official duties when he terminated plaintiff. However, this argument begs the question. If defendant was motivated solely by malice or a desire to induce the corporation to breach its contract, his actions are, by definition, outside the scope of his official duties and are improper.

Motivation is a question of fact. *Cronk*, 765 P.2d at 623. Here, plaintiff has evidence that his termination was not in the best interests of Amax because he was a "key employee" needed to make a smooth integration of Ladd into Amax. Indeed, one of plaintiff's superiors at Ladd, Phillip Carr, testified in his deposition that plaintiff's termination was detrimental to employee morale and not in the best interests of Amax. Further, plaintiff has some proof that Parks was motivated by malice. Carr testified that Parks wanted to terminate plaintiff because he did not trust him and he did not need enemies on the inside. Another of plaintiff's superiors at Ladd, Ronald Spence, testified that Parks said "I'm going to have my way on this one.... If Bill doesn't think our offer is comparable, he can stick it." Moreover, plaintiff had received above average performance reviews for his more than 20 years of employment, and the day before his termination, he received a $10,000 bonus for his superior work.

Therefore, a reasonable juror could certainly conclude that Parks was motivated solely by a desire to induce a breach or by malice towards the plaintiff because he questioned the comparability of the Houston job offer. Accordingly, there is a genuine dispute of material fact precluding summary judgment on this claim.

### IV.

Next, defendants argue that plaintiff's third claim for defamation must fail because the alleged defamatory statement is not slander per se and, therefore, requires proof of special damages. Parks also asserts that he enjoys a qualified privilege for his alleged defamatory statements. Again, I disagree.

Whether a statement is slanderous per se is a question of law for the court. *Inter–State Detective Bureau, Inc. v. Denver Post, Inc.*, 29 Colo.App. 313, 484 P.2d 131, 133 (1971). Slander per se must carry its defamatory imputation on its face. *Id.* In evaluating a statement said to be slander per se,

> the court must interpret the [statement] alone, without the aid of inducements, colloquialisms, innuendos, and explanatory circumstances. To be [slanderous] per se, the publication must contain defamatory words specifically directed at the person claiming injury....

*Id.* A statement is slanderous per se if no extrinsic evidence is necessary to show that it is "of and concerning" the plaintiff. *Lind v. O'Reilly*, 636 P.2d 1319, 1320 (Colo. App.1981).

Here, plaintiff testified in his deposition that Parks said to him: "Oh, by the way, I told Dammerman and Bossidy that you have done a bad job or terrible job" in the area of credit and collections. Dammerman and Bossidy are both officers of GE. Further, other officers of Amax testified that they had discussions with Parks concerning "inadequacies" in plaintiff's job performance. Clearly, Parks' statement is defamatory of plaintiff's professional skill and reputation. Parks argues that the word "you" is ambiguous as to whether it is of and concerning the plaintiff. He contends that "you" could refer to Ladd as a corporate entity. However, Parks was speaking to plaintiff personally. When used in conversation with an individual, the word "you" must refer to person being addressed. If Parks meant to say that Ladd was doing a terrible job, he would not have used a personal pronoun. Therefore, this statement is slander per se and plaintiff does not need to prove special damages.

Parks also argues that his statements are entitled to a qualified privilege. A qualified privilege extends to "communications by a party with a legitimate interest to persons having a corresponding interest in communications promoting legitimate individual, group, or public inter-

ests." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1346 (Colo.1988). Whether a qualified privilege exists is a question of law for the court. *Id.*

However, the common interest privilege is only qualified or conditional. The privilege is lost if the statement is published with malice. *Dominguez v. Babcock*, 727 P.2d 362, 365 (Colo.1986). A publication is malicious if the publisher knows the statement is false, or makes the statement with reckless disregard as to its truth or falsity. *Id.* Additionally, "if a person making a defamatory statement is actuated *primarily* for purposes other than the protection of the interest for which the privilege was given . . . , the qualified privilege is negated." *Price v. Conoco, Inc.*, 748 P.2d 349, 351 (Colo.App.1987), (emphasis in original).

Here, plaintiff concedes that Parks had a common interest to share information on plaintiff's job performance in the area of credit and collections with officers of GE and Amax. However, plaintiff contends that Parks made the statements with reckless disregard of their truth or falsity and that Parks abused the common interest privilege. These are questions of fact usually reserved for the jury. *Id.* Plaintiff argues that Parks must have made the defamatory statements with reckless disregard because the day before he terminated plaintiff, Parks awarded plaintiff a bonus for his performance as Ladd's controller. Indeed, both Carr and Spence testified that they told Parks that plaintiff was an outstanding employee. Moreover, as set out above, plaintiff has sufficient evidence from which a reasonable juror could conclude that Parks was motivated by malice towards plaintiff for questioning the comparability of the Houston job offer. *See, Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo.App.1986). Therefore, there is a genuine dispute of material fact precluding summary judgment.

## V.

Parks next contends that plaintiff's fourth claim for intentional interference with prospective business relations must fail because plaintiff has come forward with no evidence that Parks' conduct caused any prospective employer not to hire him. I agree.

To prove the tort of intentional interference with contractual relations, plaintiff must show that defendant intentionally and improperly induced or caused a third party not to enter into or continue the prospective relation. *Wasalco, Inc. v. El Paso County*, 689 P.2d 730, 732 (Colo.App. 1984). In my prior orders, I held that this tort protects the prospect of obtaining employment, and that this prospect need not be verging on contract formation for plaintiff to state a claim. Orders, December 31, 1991 and November 19, 1991. Moreover, as with all tort claims, plaintiff must prove causation—that is, plaintiff must show that Parks' conduct caused or induced a specific, prospective employer not to hire him. Order, December 31, 1991.

Here, plaintiff has identified only two prospective employers, GE and Trigon Engineering. Plaintiff admits that he did not apply for employment with GE, but rather relies on his past association with that corporation to show that he had a prospect of employment. However, in the absence of a pending application for employment, no reasonable juror could find that there was a prospective relation with which Parks could interfere. As to Trigon, plaintiff did apply for employment, and he went through four interviews. Plaintiff testified that this process was abruptly cut off after Trigon called Amax employees. However, plaintiff has come forward with no evidence that Parks ever spoke with anyone at Trigon. In the absence of some evidence that Parks caused or induced Trigon not to hire plaintiff, reasonable jurors would have to speculate as to causation. Thus, no reasonable juror could find for plaintiff on this claim. Therefore, I conclude that there is no genuine dispute of material fact and summary judgment is granted.

## VI.

Lastly, defendants argue that plaintiff cannot maintain his claim for "retaliatory

discharge" in violation of public policy. I agree.

 Colorado has carved out a narrow exception from the at-will employment doctrine. When an employer directs an employee to perform an act that would violate clearly expressed public policy, or prohibits the employee from performing a public duty or exercising an important, job-related right or privilege, and the employee is terminated for his failure to so act, then the employee can state a claim for wrongful discharge. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo.1992). This exception is designed to prevent an employer from placing an employee in the position of keeping a job only by performing an illegal act, forsaking a public duty (such as jury service), or foregoing a job-related right or privilege (such as filing a worker's compensation claim). *Id.* Here, plaintiff alleges that he was fired for questioning the comparability of the Houston job offer and that his actions involved an important, job-related right or privilege protected by Colorado public policy.

 This claim fails for two reasons. First, plaintiff's employer never directed him to act in a certain way and never specifically prohibited him from exercising a job-related right or privilege. Second, plaintiff has no support for his proposition that his discharge violated a clearly expressed public policy. At best, plaintiff has articulated a generalized public policy that allegedly protects employees who seek to enforce their contractual rights. In essence, plaintiff merely restates his breach of contract claim. Therefore, I conclude that no reasonable juror could find for plaintiff, and summary judgment is granted.

Accordingly, IT IS ORDERED THAT:

(1) Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

(2) Plaintiff's first claim for relief shall be DISMISSED only to the extent that it seeks non-economic damages; and,

(3) Plaintiff's fourth and fifth claims for relief shall be DISMISSED.