**Larry GRAZIANI, Plaintiff,**

v.

**EPIC DATA CORPORATION and United Parcel Service Corporation, Defendants.**

No. 02–K–1284.

United States District Court, D. Colorado.

Feb. 25, 2004.

Horton Perry Ryon, Ryon & Associates, Evergreen, CO, for Plaintiff.

Franklin Eastwood Wright, Winstead, Sechrest & Minick, P.C., Dallas, Geraldine A. Brimmer, Kimberley Ann Dempster, Holland & Hart, LLP, Denver, CO, for Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

KANE, Senior District Judge.

This tort action brought by a former management level employee against his

employer and the United Parcel Service Corporation ("UPS") is before me on UPS's motion for summary judgment. Jurisdiction exists under 28 U.S.C. § 1332. UPS seeks summary judgment pursuant to Fed. R. of Civ. P. 56, on both of Plaintiff's asserted claims. Plaintiff Larry Graziani asserts two claims against UPS: one for intentional interference with a contractual relationship and the other, defamation. The action arose after Graziani's employer, Epic Data Corporation ("Epic"), terminated its agreement with Graziani. Pursuant to that agreement, Graziani was to receive monthly payments of $10,000 for a period of twelve months. Epic refused to pay Graziani his final two payments of $10,000, citing information from UPS that Graziani had attempted to embezzle over $740,000 in payments from UPS that were suppose to be paid to Epic. Graziani denied the allegations and then brought suit against both Epic and UPS. UPS moves for summary judgment on both of Graziani's claims against it.

Although each party's version of the events leading up to Graziani's termination varies substantially, these differences do not involve material facts that establish a genuine issue for trial. Further, no other pertinent facts or discovery were presented on which a valid intentional interference or defamation claim may rest. Defendant's motion for summary judgment is therefore granted and all claims against UPS are dismissed. Graziani's claim against Epic will proceed to trial.

## I. Background

Beginning in April of 1999, Graziani worked for Connectware, a company owned by Defendant Epic, as Vice President of Sales and Marketing. Graziani Dep. at 20:9–23:5. In August of 2000 Graziani signed a confidential employment contract with Epic making him Epic's Vice President of Sales. Graziani Dep. at 22:25–23:18; Exhibit E, Epic Employment Contract, Mot. Summ. J. Three months later, in November of 2000, Graziani and Epic terminated the employment contract and agreed to the conditions of a termination letter dated November 2, 2000. Graziani Dep. at 23:19–20; Exhibit F, Termination Letter, Mot. Summ. J. An undisclosed severance agreement provided that Mr. Graziani would receive $10,000 per month for a one-year period. Graziani Dep. At 81:11–81:17. Graziani received all but the last two payments of this package. Graziani Affidavit at 1. Epic terminated the severance payments after allegedly learning from UPS that Graziani had attempted to embezzle over $740,000 from Epic. In response to these actions, Graziani filed suit.

According to UPS, one of its employees, Dawn Magi, contacted Graziani on September 11, 2001 and inquired as to where a $743,220.00 payment from UPS to Epic should be sent. Magi Affidavit at 2. This call as well as two others are documented in UPS's telephone records. Ex. 1, Telephone Record Spreadsheet, Mot. Summ. J. According to Magi, Graziani informed her that the payment should be sent to his home in Evergreen, Colorado and he proceeded to provide her with his post office box and what he represented as a federal employer identification number (EIN) for tax purposes. *Id.* After pursuing the matter further, Ms. Magi discovered that Graziani no longer worked for Epic. Ms. Magi thereafter alerted Epic's CEO to the alleged conversations she had with Graziani. *Id.* at 3. Epic then terminated Graziani's severance package.

Graziani's version of the events differs substantially from that of UPS. He contends that he did not receive a telephone call from either Ms. Magi or any other UPS personnel. Graziani Dep. at 56:24–

57:22. He further asserts that he did not request any money, owed to Epic from UPS, be directed to his address; nor did he give any UPS personnel an incorrect EIN to validate the transfer of money to his account. Graziani Dep. at 59:2–8. Graziani explains that if Ms. Magi did try to contact him, he did not receive her call. Graziani Affidavit at 1. On September 11, 2001 he was working outside on his deck and would have been unable to hear the phone. *Id.* He also maintains that the only conversation he had with UPS personnel was at the end of September 2001, when he was questioned by UPS as to whether he was an employee of Epic and, according to Mr. Graziani, he responded that he was not. P. Resp. Mot. Summ. J. at 4. Graziani sued, asserting claims for relief against Epic and UPS. Only Graziani's claims against UPS are at issue in the instant motion.[1]

UPS moves for summary judgment on Graziani's claims for intentional interference and defamation on grounds that Graziani's denial of the alleged conversation with Ms. Magi is insufficient to establish essential elements of both claims. Mot. Summ. J. at 7–9. Because Graziani has failed to come forward with evidence affirmatively establishing these elements, no genuine issue of material fact exists on which this case may proceed.

## II. Summary Judgment Standards

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment for the defendant, the court reviews the facts in a light most favorable to the plaintiff. *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096. 1098 (10th Cir.2002); *Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999) ("[W]e view the evidence and draw reasonable inferences in a light most favorable to the nonmoving party."). Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon such a showing, the burden then shifts to the non-moving party. *Bacchus Indus., Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir.1991). Further, the non-moving party may not rest on the allegations contained in the complaint, but instead he must respond with specific facts showing the existence of a genuine factual issue. Fed.R.Civ.P. 56(e); *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980).

Additionally, when determining the adequacy of the non-moving party's opposition to a summary judgment motion, a decision should be based on whether reasonable jurors could find, by a preponderance of the evidence, that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If in viewing all of the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party, summary judgment is precluded. *Id.* at 252, 106 S.Ct. 2505.

1. Initially, Graziani brought claims alleging negligent misrepresentation, intentional interference with a contractual relationship and defamation. Graziani withdrew the negligent misrepresentation claim and accordingly, the only claims remaining against UPS are the intentional interference and defamation claims.

## III. Discussion

### A. Intentional Interference with a Contractual Relationship

This Court is exercising its diversity jurisdiction and the substantive law of Colorado therefore governs this dispute. *Blackhawk–Central City Sanitation Dist. v. Am. Guarantee,* 214 F.3d 1183, 1188 (10th Cir.2000). Colorado recognizes the tort of intentional interference with contractual relations. *American. Express Financial Advisors, Inc. v. Topel,* 38 F.Supp.2d 1233, 1241 (D.Colo.1999); *Colorado Nat'l Bank of Denver v. Friedman,* 846 P.2d 159, 170 (Colo.1993); *Memorial Gardens, Inc. v. Olympian Sales and Mgmt. Consultants, Inc.,* 690 P.2d 207, 210 (Colo.1984) (adopting RESTATEMENT (SECOND) OF TORTS §§ 766–768 which address intentional interference with a contract). To establish a prima facie case of intentional interference with contractual relations, the plaintiff must prove (1) the existence of a valid contract between the plaintiff and the third party; (2) knowledge by the defendant of a contract; (3) intentional action by the defendant that induced the breach of the contract and; (4) resulting damages. *Lutfi v. Brighton Cmty. Hosp. Ass'n,* 40 P.3d 51, 58 (Colo. App.2001); *see also Williams v. Burns,* 540 F.Supp. 1243, 1251 (D.Colo.1982).

This dispute turns on whether Mr. Graziani has met his burden, by putting forth specific facts, showing that a genuine issue of material fact exists to support his intentional interference claim. Specifically, the parties disagree as to whether two of the four requisite elements are met: 1) whether UPS knew or should have known of either the employment contract or the severance agreement with Epic and 2) whether UPS intended to cause the breach of a contract. Mr. Graziani declares that UPS's summary judgment motion, with respect to the intentional interference claim,

should be denied. He argues that there is a genuine issue of material fact when the evidence is considered in the light most favorable to the nonmoving party. Pl. Resp. Mot. Summ. J. at 5. He asserts, "the inference can clearly be reached that Defendant UPS knew or should have known that Plaintiff Graziani and Epic Data had a contract for Plaintiff's termination." *Id.* at 5. Graziani reasons that "[i]f the . . . undisputed evidence and the conflicting evidence are taken together in the light most favorable to the nonmoving party . . . a substantial inference can be drawn that defendant UPS, through the conduct of its agents, intended to cause Defendant Epic Data to terminate the contract . . ." *Id.* at 6. I disagree.

Generally, disputes of fact are appropriately answered and resolved by a jury whose primary function is to make determinations about people's conduct based on objective standards, and not by a judge on summary judgment. A. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding our Day in Court and Jury Trial Commitments?* 78 N.Y.U. LAW. R. 982, 1132 (June 2003). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [and] trial courts should [not] act other than with caution in granting summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In this case, however, Graziani's "facts" are not grounded in matters material to his claim and summary judgment is therefore appropriate. An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998). A factual dispute is

"material" only if "under the substantive law it is essential to the proper disposition of the claim." *Id.* If the party bearing the burden of persuasion at trial fails to come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial. *Id.*

■ Here, although Graziani and UPS allege varying versions of the events leading up to Graziani's termination, these facts alone do not reach the threshold of materiality. The disputed facts in this case do not present sufficient evidence, which if viewed in a light favorable to the plaintiff, establish either the element of knowledge or the element of intent as required to prove an intentional interference claim. Graziani provides no affirmative evidence, direct or circumstantial, that UPS knew or should have known of either his employment contract with Epic or of the severance agreement. Further, he has failed to depose possible relevant persons in this case or to acquire anything resembling affirmative evidence from the defendant or anyone else. His arguments rest on conclusory and inference-leaping statements claiming that UPS should have known of the existence of a contract between Graziani and Epic because Graziani's signature was on the contract signed between Epic and UPS. Pl. Res. Mot. Summ. J. at 5. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to support a plaintiff's position that genuine issues of material fact exist. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. A plaintiff has to rest on more than the allegations he set forth in his pleadings. Fed.R.Civ.P. 56(e); *see also Otteson*, 622 F.2d at 519. Graziani has therefore not met his burden.

Moreover, Graziani stated in his deposition that to his knowledge no one at UPS was aware of his employment contract with Epic Data, that he did not share his November 2000 severance agreement with anyone at UPS and that he has no evidence or personal knowledge that anyone at UPS knows about the terms of his termination with Epic. Graziani Dep. at 66:15–17; 85:21–25; 86:7–20. Not only did Graziani fail to set forth sufficient facts in which a jury could reach a determination that UPS did know of an existing contract, but he contradicts his own allegations by stating, under oath, that UPS was not aware that a contract even existed. Because Graziani cannot set forth sufficient evidence to establish UPS's knowledge of an existing contract all other issues concerning any other element of his intentional interference claim become immaterial. *Adler*, 144 F.3d at 670. However, even if this Court were to find that evidence was presented in which reasonable jurors could possibly find that UPS did know of an existing contract, summary judgment would still be appropriate because Graziani has not presented any evidence to establish the element of intent.

### B. Defamation

■ UPS also moves for summary judgment on Graziani's second cause of action for defamation arising from UPS's alleged "publication" of defamatory statements to Epic. In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the state irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Brown v. O'Bannon*, 84 F.Supp.2d 1176, 1181 (D.Colo.2000); *Williams v. Dist. Court*, 866 P.2d 908, 911n. 4 (Colo.1993); *see also* RESTATE-

MENT (SECOND) OF TORTS § 558 (1979). UPS asserts that summary judgment is appropriate in this instance because a qualified privilege exists between UPS and Epic and thus the element of publication was not met. UPS also relies on Graziani's failure to put forth evidence of damages. I agree that a qualified privilege between UPS and Epic exists and, because Graziani did not present genuine issues of fact concerning the question of malice, find summary judgment is warranted. Additionally, Graziani has also failed to set forth evidence of damages.

■ Whether a qualified privilege exists, to communicate potential defamations is a question of law for the court. *Meehan v. Amax Oil & Gas, Inc.*, 796 F.Supp. 461, 467 (D.Colo.1992); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1346 (Colo.1988). Qualified privileged communications are those communications that are "fairly made by a person in the discharge of some public or private duty, whether moral or legal, or in conduct of his own affairs and in matters where his interest is concerned." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 568 F.Supp. 602, 607 (D.C.Colo.1983) (adopting RESTATEMENT (SECOND) OF TORTS § 595 (1977)).

Various Colorado cases, applicable here, have found a qualified privilege in certain similar situations including communications of inter-office memoranda and comments concerning employees. *See Dominguez v. Babcock*, 727 P.2d 362 (Colo.1986) (supervisors have interest in comments concerning employee); *Abrahamsen v. Mountain States Tel. & Tel., Co.*, 177 Colo. 422, 494 P.2d 1287, 1289 (1972) (finding a qualified privilege exists regarding inter-office memoranda). Further, Colorado courts have found a qualified privilege to exist in a number of other situations generally applicable here. *E.g., Thompson v. Public Serv. Co. of Colorado*, 800 P.2d 1299

(Colo.1990) (statements made by employer explaining why disciplinary actions were taken against employee were subject to qualified privilege).

■ UPS primarily relies on *Williams v. Burns*, where I found a qualified privilege to exist in a similar situation between two defendants. 463 F.Supp. 1278, 1283 (D.Colo.1979) (Kane, J.). In that case, defendant Burns communicated information to defendant Anschutz regarding the plaintiff's alleged fraudulent acts and these comments were deemed subject to a qualified privilege. *Id. Coopersmith v. Williams* and *Melcher v. Beeler* are also dispositive here. *See Coopersmith v. Williams*, 171 Colo. 511, 468 P.2d 739 (1970); *Melcher v. Beeler*, 48 Colo. 233, 110 P. 181 (1910). In *Coopersmith*, the court found that a father's letter to pertinent directors, objecting to the accompaniment of a suspended policemen facing trial for burglary, on his son's Boy Scout trip, concerned a *matter of legitimate interest to the father and therefore came within the scope of a qualified privilege.* 468 P.2d at 739 (emphasis added) (court found a directed verdict appropriate because there was no evidence of malice in or beyond the letter itself and no showing of circumstances from which malice might be inferred). In *Melcher*, the court found that a qualified privilege existed regarding allegedly defamatory letters that were written as *"bona fide inquiries regarding the business integrity of the plaintiffs."* 110 P. at 185 (emphasis added). Here, as in *Coopersmith*, the information UPS released to Epic amounts to a legitimate interest and further, as in *Melcher*, the information is tantamount to a bona fide inquiry regarding Graziani's business integrity.

Additionally, as the Restatement comments, "[a]n occasion makes a publication conditionally privileged if the circum-

stances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is *information that another sharing the common interest is entitled to know.*" RESTATEMENT (SECOND) OF TORTS § 596 (emphasis added); *see also Price v. Conoco, Inc.,* 748 P.2d 349, 350–51 (Colo.App.1987) (referencing the RESTATEMENT (SECOND) OF TORTS § 596). Publications representing a sufficiently important common interest to a recipient or third party have, in prior cases, been found to create a qualified privilege. *See Price,* 748 P.2d at 350–51. Here, it is clear that Epic and UPS held a sufficiently important common interest in the information that was forwarded from UPS and received by Epic. An alleged attempt to embezzle large sums of money is a sufficiently important interest not only for the company paying money out, but also to the company that may possibly lose its profit. A qualified privilege as to the publication of information from UPS to Epic therefore exists.

The immunity conferred, if a qualified privilege is found, is not absolute but is conditioned upon publication in a reasonable manner and for proper purpose. *Dominguez,* 727 P.2d at 366 (court found that in the absence of any evidence establishing malice, summary judgment is appropriate). If a publication is privileged, the plaintiff must prove that the defendant made the communication with malice, or in reckless disregard of the veracity of the communication. *Id.; see also Meehan,* 796 F.Supp. at 461. Here, as in *Dominguez,* where nothing in the record indicated malice, a qualified privilege to make a communication requires a presumption of good faith and summary judgment is therefore proper. Graziani did not present factual information to create an intent of malice on the part of Magi or UPS. Because a qualified privilege exists and malice is not established, the element of publication is

not met. Again, as with his intentional interference claim, Mr. Graziani merely relied on inferences and the allegations set forth in his complaint. There was not enough evidence presented for a reasonable jury to find in his favor.

Finally, the law of defamation has developed for the purposes of protecting one's reputation. *See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 408 F.Supp. 1219, 1233 (D.Colo.1976). The purpose of a defamatory action, therefore, is to "redress and compensate individuals who suffered serious harm to their reputations due to the careless or malicious communications of others." *Keohane v. Stewart,* 882 P.2d 1293, 1297 (Colo.1994); *see also O'Bannon,* 84 F.Supp.2d at 1181 (A statement is determined to be defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."). A plaintiff must be able to show damage to his reputation.

■ Graziani has not brought forth evidence to support claims of reputational harm, again failing to establish factual material on which genuine issues may be presented at trial. As UPS accurately observes, Graziani relies solely on his "suspicion" and "intuition" that this information is in the public domain and is hurting his reputation. *See* Graziani Dep. at 90:8–91:7; 91:20–92:3; 98–13–98:20. At no point does he provide evidence that demonstrates any loss of reputation, loss of stature in the community, or effectively that anyone aside from the few parties involved in this controversy even know of the alleged situation. Graziani did not articulate or demonstrate damages attributable to the alleged defamatory statement. Graziani Dep. 98:13–20. Instead, Graziani avoids directly addressing the issue of rep-

utational harm by simply asserting that he has incurred damages as a result of the $20,000 Epic is now refusing to pay. The existence of economic loss, to the extent it could be proved, does not establish such loss was caused by any damage to Graziani's reputation. The claim to those damages is part of the breach of contract claim arising against Epic. Loss of the last two months of the severance package does not, by contrast, establish damages to Graziani's reputation.

If an action exists in this case it lies against Epic and not UPS. UPS's summary judgment motion is granted.